*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0263P (6th Cir.)
File Name: 04a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

*v.*

No. 01-5338

SEAN CARTER,
    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00058—Henry R. Wilhoit, Jr., District Judge.

Argued: June 11, 2003

Decided and Filed: August 6, 2004

Before: BOGGS, Chief Judge; and MARTIN,
KRUPANSKY, BATCHELDER, DAUGHTREY,
MOORE, COLE, CLAY, GILMAN, GIBBONS,
ROGERS, SUTTON, and COOK, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Robert L. Abell, Lexington, Kentucky, for
Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED
STATES ATTORNEY, Lexington, Kentucky, for Appellee.
**ON BRIEF:** Robert L. Abell, Lexington, Kentucky, for

Appellant. Charles P. Wisdom, Jr., Ron L. Walker, Jr.,
ASSISTANT UNITED STATES ATTORNEYS, Lexington,
Kentucky, for Appellee.

    BOGGS, C. J., delivered the opinion of the court, in which
KRUPANSKY, BATCHELDER, DAUGHTREY,
GIBBONS, ROGERS, SUTTON, and COOK, JJ., joined.
MARTIN, J. (pp. 10-13), delivered a separate dissenting
opinion, in which MOORE, COLE, and CLAY, JJ., joined,
with MOORE, J. (pp. 14-18), also delivering a separate
dissenting opinion in which COLE and CLAY, JJ., joined.
GILMAN, J. (pp. 19-21), delivered a separate dissenting
opinion.

———————————

## OPINION

———————————

    BOGGS, Chief Judge. Defendant Sean Carter pleaded
guilty to possession of crack cocaine with intent to distribute
and to aiding and abetting his cohort Calvin Holliday in the
same crime. The district court denied his motion to suppress
evidence gained from a warrantless search by police of his
hotel room, and he now challenges that ruling.

    A divided panel of this court previously affirmed the
district court ruling, on the grounds that exigent
circumstances had justified the police officers' entry into
Carter's hotel room. We granted rehearing *en banc* to
consider whether the circumstances truly qualified as exigent.
2003 U.S. App. LEXIS 3371. We need not reach that
question because we now conclude that the district court
correctly found that Carter consented to the officers' entry.

I

    The facts in this case appear in greater detail in the panel
decision at 315 F.3d 651. We repeat the salient points here.

On March 21, 2000, in Lexington, Kentucky, a confidential informant informed law enforcement officials that Carter and Holliday were in the process of leaving a "crack house" to obtain more crack cocaine for sale. The confidential informant provided a description and license plate number for the vehicle in which Carter and Holliday were traveling.

Law enforcement officers followed the vehicle to a Red Roof Inn and observed Carter and Holliday enter Room 119. They monitored the room until Holliday left it and returned to his vehicle. When Holliday began to drive out of the parking lot, the officers executed a traffic stop, detected the odor of marijuana emanating from the vehicle, and observed marijuana in the vehicle. They arrested Holliday and searched his person and vehicle, finding seventeen grams of crack cocaine. The validity of this arrest is not challenged.

The officers then returned to Room 119. They knocked on the door four times, the first two times identifying themselves as housekeeping personnel. Carter finally opened the door, and saw two officers wearing vests bearing the word "POLICE" over civilian clothes, and a third in a police uniform. None of the officers had their firearms drawn or otherwise behaved in a threatening manner. The officers identified themselves. As they did so, they smelled marijuana from inside the room and observed what appeared to be, and was, the stub of a mostly-consumed marijuana cigar, or "blunt," in plain sight in an ashtray on a table adjacent to the door.

It is undisputed that at this point the officers asked Carter if they could enter the hotel room and speak to him. In response, Carter stepped back and cleared a path for the officers to enter. Detective Edward Hart immediately proceeded to the table, picked up the "blunt" stub, and quickly confirmed by sight and scent his initial belief that it contained marijuana. The officers then placed Carter under arrest. Carter proved to be carrying twelve grams of crack cocaine and $ 1,749 in cash on his person.

A federal grand jury indicted Carter and Holliday on five counts of cocaine trafficking, in violation of 21 U.S.C. § 841(a)(1). The district court conducted an evidentiary hearing and denied Carter's motion to suppress the evidence found in the hotel room and on his person. At the hearing, Detective Hart testified in detail as to the circumstances of his entry into Room 119. The district court found the officers' entry justified by exigent circumstances, namely that once Carter was alerted to the presence of law enforcement personnel he could have quickly disposed of the evidence; in the alternative, the court found that Carter had validly consented to the officers' entry into his hotel room. Carter thereupon conditionally pled guilty, reserving the right to challenge his conviction based on the outcome of the suppression hearing. Following sentencing, Carter timely brought this appeal.

II

This court reviews "a district court's factual findings regarding motions to suppress for clear error and its legal conclusions de novo." *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000) (citation omitted). Where a district court denies that motion, we consider the evidence "in the light most favorable to the government." *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999) (citation omitted).

It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search. *Davis v. United States*, 328 U.S. 582, 593-94 (1946). Consent to a search "may be in the form of words, gesture, or conduct." *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976). In whatever form, consent has effect only if it is given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is "a question

of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Thus, our review is for clear error. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc). Carter did not testify at the suppression hearing, so our information as to the exact sequence of events after Carter opened the door to Room 119 comes by way of Detective Hart's testimony:

Q. Okay. And again, you testify that Mr. Carter told you all to come on in. You all just entered the room on your own; right?

A. We asked if we could come in and speak to him. At this time he moved away from the door and backed up.

Q. Did he say yes?

A. I don't recall him saying yes. But as he was doing that, I went on to retrieve the suspected marijuana.

Q. Okay. So as he was standing, stepping back, you were proceeding on in any way?

A. Yes. Based on the odor that I smelled and what I was observing, I went in to obtain [the blunt].

* * * * * * *

Q. [Y]ou said that you are not certain if he responded either yes or no to Detective Carter's asking about – asking permission to come in?

A. That's correct.

Q. But regardless of what he said, you had already ascertained the odor of marijuana, and seeing this blunt that you were going to seize that and arrest him for possession of marijuana regardless?

A. Yes. I was going to seize that item.

We hold that the district court did not clearly err, considering this testimony and all the circumstances, in finding that Carter's actions as described constituted valid consent. The investigating officers were instantly recognizable as policemen when Carter opened the door. They properly asked permission to enter, and Carter stepped back, letting them in. Any ordinary caller, under like circumstances, would understand assent to have been given, and the police are not held to a higher standard in this regard than an ordinary person. *Robbins v. MacKenzie*, 364 F.2d 45, 49 (1st Cir. 1966) ("An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest . . . . Similarly, the fourth amendment . . . does not require [a police officer] to be clairvoyant.").

A number of cases with superficially similar fact-patterns have held that the confrontation between police and suspect was impermissibly tainted by "duress, coercion [or] trickery." *United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981) (search not consented to, where police officers pounded and kicked on door, barged in with firearms drawn before any words were exchanged, and claimed to have a warrant). Even a spoken assent to search may be too ambiguous to establish consent in certain circumstances. *E.g.*, *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999)("you've got the badge, I guess you can [search]" is not consent where context was intimidating and defendant testified that he felt he had no choice.) But each such determination is "fact-specific," and there is no "'magic' formula or equation" for determining consent in the abstract. *Id.* at 387.

Here, the officers specifically asked if they could come in, and Carter was not threatened, coerced, or tricked when he chose to let the officers into his room. Nothing in the record indicates that he was unaware of his well-known right to refuse entry, which he might have done simply by standing pat, saying "no," or closing the door. His decision may have

been rash and ill-considered, but that does not make it invalid. The Fourth Amendment does not require police officers to counsel a suspect to consider his options with care.

Carter makes much of the fact that Hart apparently intended in any event to enter the room to seize the blunt. What Hart might have done had consent not been given is, of course, irrelevant. But Carter urges that consent was not given because Hart carried out his intent and barged ahead to seize the blunt, and Carter merely jumped out of the way. This is one possible reading of Hart's testimony, and such a scenario would not amount to consent. *See Robbins*, 364 F.2d at 48 (stepping back in fear is not consent). But precisely because testimony often becomes more ambiguous when reduced to toneless words on a page, we defer to the district court's factual finding. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").

Carter further contends that the district court judge never actually found that consent was given, so there is no occasion for deferential review. Carter relies on the judge's exact words at the suppression hearing: "I believe the officer has testified without contradiction here now that he has permission to enter the room. And the defendant did not say anything but stepped back, which indicates to the Court that there was at least acquiescence." Focusing on the word "acquiescence," Carter reminds us that consent will not be found upon mere "acquiescence to a claim of lawful authority." *Bumper*, 391 U.S. at 548-49 (1968).

Carter's verbal quibble is bootless. *Bumper* dealt with acquiescence to the execution of an improperly-issued warrant. *Ibid.* The officers here made no such overpowering claim of authority, in the face of which any consent would have been mere acknowledgment. "Acquiescence" commonly indicates assent, however grudging. Black's Law Dictionary, 23 (7th ed. 1999)("tacit or passive acceptance;

implied consent"); Ballentine's Law Dictionary (3d ed. 1969) ("acceptance, perhaps without approval . . . . Conduct from which may be inferred assent with a consequent estoppel or quasi-estoppel" (citations omitted)). Here, the district judge explicitly used "acquiescence" to mean "permission"—that is, consent.

Fundamentally, Carter asks us to hold as a matter of law that consent must be given verbally, perhaps by some "magic words" formula. This we decline to do. Although a man's home is his castle, trumpets need not herald an invitation. The police may be kept out or invited in as informally as any other guest. Carter invited the police in and cannot undo his act in court.

### III

Once invited into Carter's hotel room to talk, Detective Hart had the latitude of a guest in the room unless restricted by Carter himself. Thus, there was nothing improper in Hart's decision to take the few steps to the table which, he testified, was "near the door, between the door and the wall," and visible even from outside the room. Once he had arrived there, the smell and appearance of the blunt, coupled with the knowledge that Holliday had confessed to having smoked marijuana a short time ago in that room, "warrant[ed] a man of reasonable caution in the belief" that it was a blunt and not a legal cigar filled with tobacco. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). The "plain view" exception to the warrant requirement applies: the blunt was in plain view; there was probable cause to consider it incriminating on its face; Hart was lawfully in position to see it; and Hart had a lawful right of access to the item. *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997).

As some of our colleagues note, Hart did testify that a blunt closely resembles an ordinary cigar. But this does not mean, contrary to Judge Martin's dissent (page 12), that "the

fact that the cigar was a 'blunt' was not immediately incriminating." If Hart was reasonable in believing the object was a blunt based on what he lawfully observed, then it was immediately incriminating. *United States v. McLevain*, 310 F.3d 434, 441 (6th Cir. 2002)("marijuana . . . on a table in plain view" would obviously be immediately incriminating). A "blunt" *is* a marijuana-filled cigar. Hart testified that this particular 'cigar' smelled like burnt marijuana, and that as an experienced drug-interdiction officer, he was very familiar with that scent. *See Brown*, 460 U.S. at 743 (1983) (officer who used his "trained eye" to identify dual-use drug paraphernalia had probable cause). As he got closer to the 'cigar,' he testified, the scent got stronger, and when he looked closely at the stubbed-out end, he could see "the green leafy substance in the end." *See id.* at 740 (officer whose suspicions are aroused may shift angle of view and shine light on suspect objects to see them better); *compare Arizona v. Hicks*, 480 U.S. 321, 325 (1987) (officer relying on plain view doctrine may not "expose[] to view concealed portions" of homeowner's property). Unlike the officers in *McLevain*, Hart did not have to conduct "further investigation" (e.g., chemical testing of commonplace objects). *McLevain*, 310 F.3d at 443. He had probable cause "on the facts then available." *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987).

Carter does not argue that there was anything improper about his consequent arrest or the search of his person incident to that arrest, except insofar as the further search would be the 'fruit of the poisonous tree' had the initial seizure been improper. Because the initial seizure was proper, the tree is untainted, and in the absence of any other reason to suppress the resulting evidence, it was properly admitted.

## IV

For these reasons, we AFFIRM the order of the district court.

## DISSENT

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. Of the various justifications that have been used to sanction the warrantless search in this case, in my view none satisfies constitutional standards. The district court found that Sean Carter consented to the search of his room and person. On appeal, a divided panel did not reach the issue of consent, finding instead that exigent circumstances justified the search. The majority now chooses not to reach the issue of exigent circumstances, and upholds the district court's decision on yet another alternative basis. From the hat of uncertain jurisprudence, the majority hand-picks anomalous justifications to rationalize unlawful police action in retrospect, concluding that Carter may not have consented to the search, but he did consent to the officers' entry, and, because marijuana was in "plain view," the subsequent search of his room and person was valid. Of all of the proffered justifications for the police action in this case, the majority's is particularly repugnant, and I necessarily dissent.

On the night that Carter was arrested, the officers were pursuing a confidential informant's tip that Carter and his friend, Calvin Holliday, were going to a motel to resupply their crack cocaine inventory. While surveilling the motel for over an hour and a half, the officers had time to summon a narcotics detection dog and handler to the scene, but failed to obtain a warrant to search Carter's motel room. In the absence of any urgency, the police had additional time to obtain a search warrant after they stopped Holliday, who, in combination with the informant's tip, provided the officers with probable cause to believe that they would find more contraband in the motel room. Though they had plenty of time to obtain a warrant, the officers proceeded inside without one.

Arriving at Carter's motel room door, they knocked twice and deceptively called out that they were motel housekeeping personnel. After two more knocks, Carter opened the door. Detective Edward Hart testified that at that moment, he spotted a cigar on a table inside and noticed that Carter was there alone. Accompanied by officers who were wearing official identification and were presumably armed, Detective Hart requested permission to enter the room. Upon this show of force, Carter stepped back, but did not respond. In the same moment, Detective Hart walked past Carter to examine the cigar and determined that it was a "blunt"—a hollowed-out cigar filled with marijuana.

The trial court found that Carter voluntarily "acquiesced" to the search by "stepping back" from the door upon Detective Hart's request to enter, and that Carter's "acquiescence" signaled consent. The majority partially agrees, finding that Carter's "acquiescence" signaled his consent to the officer's entry, though not necessarily to the search. In that sense, the majority concludes, Carter "invited" the officer in as he would "any other guest." This conclusion lacks any foundation in fact or law. A police officer is not "any other guest." Consent to entry in this case must satisfy the requirements of the Fourth Amendment.

We studied those requirements in *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999), where we held that consent exists only when it is "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." Consent is a "free and voluntary" statement of acceptance, and not "merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *Id*. at 386. Carter's motion of "stepping back" upon a show of police force hardly signals an unequivocally free or voluntary response. Rather than an invitation, Carter's "stepping back" was more likely futile resignation or an effort to get out of harm's way. On this record I simply cannot conclude that Carter's "acquiescence"

met the stringent requirements for consent that we have articulated in our Fourth Amendment jurisprudence.

Supplementing its conclusion that Carter consented to the officers' entry, the majority utilizes the "plain view" exception to the Fourth Amendment's warrant requirement to legitimize the warrantless search. The majority's holding is wholly indefensible. This Court has explained that to invoke the plain view doctrine, the evidence must be "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994) (citing *Horton v. California*, 496 U.S. 128 (1990)). *See also United States v. Morgan*, 743 F.2d 1158, 1167 (6th Cir. 1984). The "plain view" exception is inapplicable in this case because the fact that the cigar was a "blunt" was not immediately incriminating. *See United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002) ("[W]hen an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating.") (citation omitted).

Detective Hart's own testimony supports this conclusion. Hart explained: "From the door frame I could look in, and there was a small table . . . between the door and the wall. On that I saw a--what I thought was a blunt--it's a hollowed out cigar that marijuana is then put into." Detective Hart later acknowledged, however, that whether a cigar is truly a "blunt" can only be verified by close examination. This exchange followed:

Q. From the outside it looks like a regular cigar?

A. Yes.

Q.   Okay.  So if I am looking across--if one was sitting on the table over there,      it might  very well be filled with marijuana, but it would look like a regular      cigar?

A.   That's correct.

From this testimony, it is clear that the fact that the cigar was a "blunt" was not immediately apparent; rather, that fact was only discoverable upon closer inspection.  Because the item that Detective Hart observed was not immediately incriminating from where he stood, the "plain view" exception to the warrant requirement cannot apply.

The United States has established neither consent nor the applicability of the "plain view" exception.  And certainly there were no exigent circumstances—the officers had plenty of time to secure a warrant after they stopped Calvin Holliday.  Still, the majority inexplicably makes a determined effort to legalize unlawful police conduct and lead us through the gates of legitimacy, down the steep slope of retrospective rationalization, to where, even in this day of technological sophistication, we carelessly allow the expansion of police powers beyond what the Constitution allows.  *See United States v. Carpenter*, 360 F.3d 591, 604 (6th Cir. 2004).  I would suppress and therefore I dissent.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  I join fully in Judge Martin's persuasive dissent.  I separately and respectfully dissent from the majority because the government has failed to prove by a preponderance of the evidence that Sean Carter ("Carter") "unequivocally" consented to the police officers' entry into his hotel room.  I concur neither with the majority's quiet adoption of a principle that implied consent will suffice to justify a warrantless entry nor with its application of this standard to the entry of Carter's hotel room.   Such a holding unnecessarily upends the precedent of this circuit in a manner that contradicts the law established by the United States Supreme Court.

One must begin with the constitutional imperative against warrantless entries ensconced in the Fourth Amendment.  Because "[t]he right of the people to be secure . . . against unreasonable searches and seizures[] shall not be violated," U.S. Const. Amend. IV, warrantless searches and seizures are "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see United States v. Haddix*, 239 F.3d 766, 767 (6th Cir. 2001) ("As a practical matter, [the Fourth Amendment] normally requires the police to have a warrant whenever their conduct compromises an individual's privacy in his or her personal affairs."). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton*, 445 U.S. at 585 (quotation and citation omitted).  Nonetheless, consent is "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  Given that the consent exception is "jealously and carefully drawn," *Jones v. United States*, 357 U.S. 493, 499 (1958), it is no surprise that, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness

of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) (emphasis added). "*This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.*" *Id.* at 548-549 (emphasis added).[1] The strong aversion to warrantless entries has led us to hold that "not any type of consent will suffice, but instead, only consent that is '*unequivocally, specifically, and intelligently given*, uncontaminated by any duress and coercion.'" *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)).[2]

Applying the above principles, I am left with the definite and firm conviction that the district court reached the wrong result because the government failed to prove by a preponderance of the evidence that Carter consented to the officers' entry. We have never previously established that implied consent justifies an otherwise illegal warrantless entry. As even the majority recognizes, "acquiescence" is

---

[1]The test for consent established in *Bumper v. North Carolina*, 391 U.S. 543 (1968), is certainly germane here. The Supreme Court in *Bumper* established a general test that when a prosecutor relies on consent to justify a search, the burden to prove that such consent was 1) actually given and 2) freely and voluntarily given "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548-49. That *Bumper* dealt primarily with the second part of the inquiry — whether consent was voluntary when law enforcement officers asserted that they possessed a warrant— does not negate the applicability of the Supreme Court's general statement about acquiescence to cases assessing the threshold question of whether consent was even given in the first place.

[2]There is a distinction between consent to entry and consent to search in the sense that when a defendant consents to the entry of police officers, he or she does not automatically consent to a search. *See United States v. Ivy*, 165 F.3d 397, 401-04 (6th Cir. 1998) (analyzing first whether consent to entry was given before assessing whether consent to search was given and was voluntary). We apply the same standards for consent when analyzing either issue. *Id.* at 401-02.

synonymous with "implied consent," Maj. Op. at 7 (citing Black's Law Dictionary 23 (7th ed. 1999)), and it is well-settled that acquiescence to authority is not enough to demonstrate consent. *Bumper*, 391 U.S. at 548-49. Consequently, we have required that consent be unequivocal, specific, and intelligent. *United States v. Haynes*, 301 F.3d 669, 682 (6th Cir. 2002); *Worley*, 193 F.3d at 386; *Tillman*, 963 F.2d at 143. We have not been alone. *See United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996); *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1989). This is not to say that unequivocal consent need always be verbally given or formally delivered. A nod, a terse "okay" in response to a request to enter, or a hand gesture, may constitute unequivocal consent depending on the particular circumstances.

Carter took no such action, however, and his recession into the room did not signal an unequivocal consent to a warrantless entry. The police knocked loudly four times, identifying themselves the first two times as housekeeping staff. Joint Appendix ("J.A.") at 74 (Det. Hart Test.). When Carter opened the door, he saw three police officers, two wearing "POLICE" vests and one in full uniform. The officers identified themselves and asked to enter. Detective Hart ("Hart") testified that Carter "moved away from the door and backed up," J.A. at 76, but Hart never stated that Carter "cleared a path for the officers to enter," as the majority depicts. Maj. Op. at 2. Furthermore, Hart made clear that regardless of whether Carter gave consent, the officers planned to enter the hotel room and seize the "blunt" once they had smelled the marijuana. J.A. at 79.

The only possible signal of consent is Carter's act of stepping back into the hotel room. Carter did not say anything while he retreated, such as "okay" or "fine," after the police asked to enter the room. *See United States v. Garcia*, 997 F.2d 1273, 1281 (9th Cir. 1993) (holding that consent existed when defendant said "okay," nodded, and stepped back in response to officers' request to enter). Carter did not

nod or gesture so as to indicate an affirmative response to their request. Moreover, this is not a situation in which Carter refused entry to the officers on one occasion but then stepped back after the officers made a second request to enter, such that his silence on the second attempt could constitute consent in juxtaposition with his first response. *See United States v. Griffin*, 530 F.2d 739, 743 (7th Cir. 1976) (holding that when defendant had first responded "no" to a request to enter, slamming his door in the officers' faces, but then had stepped back and left his door open without explicitly refusing to grant entry after the officers repeated the request several minutes later, the defendant's actions constituted consent because of the disparity between the defendant's two different reactions). Instead, Carter simply stepped back and did not say a word to the officers, one of whom testified that he would have entered the room to seize the blunt no matter Carter's response. *Cf. United States v. Albrektsen*, 151 F.3d 951, 955 (9th Cir. 1998) (ruling that defendant did not consent when both the officers and the defendant recalled that "entry was going to made with or without permission," and the defendant stepped back from the door because he felt that he would have been knocked down if he did not move).

Carter's response cannot be considered consent; there was no affirmative act, let alone an unequivocal one. Carter's reaction to the officers' request can only be considered acquiescent behavior, which the Supreme Court has distinguished from valid consent. I cannot accept the majority's characterization of Carter's citation to established Supreme Court precedent as a "verbal quibble" that is "bootless." Maj. Op. at 7. A focus on the word "acquiescence" is entirely proper because the Supreme Court has explicitly held that acquiescence to a claim of lawful authority, whether overpowering or not, is not sufficient to satisfy the government's burden to prove consent. *Bumper*, 391 U.S. at 548-49. Furthermore, it is not only Carter who focuses on the term "acquiescence"; in ruling that Carter consented to the entry, the district court held that Carter's motion of stepping back "indicates to the Court that there was

at least acquiescence." J.A. at 82. The district court's belief that acquiescence is enough highlights its error. Because the Supreme Court has ruled that acquiescence does not equal consent, the district court clearly erred by holding that the officers were justified in entering the room on the basis that "there was at least acquiescence."

Without more, the government has failed to meet its burden of proving consent. The inability to demonstrate consent precludes the need to assess whether such consent was voluntary. Without voluntary consent, the warrantless entry and search of Carter's room was illegal, and the fruits of that search are tainted. Accordingly, I would reverse the district court.

--------

**DISSENT**

--------

RONALD LEE GILMAN, Circuit Judge, dissenting. Although I agree with the conclusion of the majority regarding Carter's implied consent to the entry by the police officers, I share Judge Martin's view that the seizure of the blunt in Carter's hotel room cannot be justified under the "plain view" exception to the prohibition against a warrantless search. The very fact that the majority opinion of Chief Judge Boggs and the dissenting opinions of Judges Martin and Moore can persuasively reach opposite conclusions about whether Carter gave implied consent to the officers' entry demonstrates to me that the district court's finding of consent was not "clearly erroneous." As the majority points out, it is well-settled that "[w]here there are two permissible views of the evidence, the district court's conclusions cannot be clearly erroneous." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Because "[i]t is not enough that this Court might give the facts another construction [or] resolve the ambiguities differently. . . ," *West v. Fred Wright Constr. Co.*, 756 F.2d 31, 34 (6th Cir. 1985), I believe that we should give deference to the conclusion of the district court regarding Carter's consent to entry by the police.

I also agree with the majority that the holding in *Bumper v. North Carolina*, 391 U.S. 543 (1968), is not applicable to the case before us. Judge Moore's dissent emphasizes that, in light of *Bumper*, the government's burden to show that consent was freely and voluntarily given "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548-49. But *Bumper* dealt with the defendant's grandmother who, informed by police officers that they possessed a valid search warrant for her home, allowed them to come in. The critical point to take from

*Bumper* is that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion . . . . Where there is coercion there cannot be consent." *Id.* at 548. In the present case, as the majority correctly observes, the police officers "made no such overpowering claim of authority." I am therefore of the opinion that Judge Moore's reliance on *Bumper*'s language, completely divorced from its factual context, is misplaced as applied to the facts before us.

Despite my agreement with the above portions of the majority opinion, I am persuaded that the seizure of the blunt from Carter's hotel room cannot be justified under the "plain view" exception for all of the reasons set forth in Judge Martin's dissent. The majority, in reaching the opposite conclusion, relies on *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997), to support its argument that the plain view exception applies because "the blunt was in plain view; there was probable cause to consider it incriminating on its face; Hart was lawfully in position to see it; and Hart had a lawful right of access to the item." I respectfully disagree that the facts of this case satisfy the *Calloway* factors. In particular, I do not believe that there was probable cause to consider the blunt "incriminating on its face" or that Hart had a "lawful right of access to the item."

The most relevant case on point, in fact, is not *Calloway*, but *United States v. McLevain*, 310 F.3d 434 (6th Cir. 2002). *McLevain* is mistakenly relied on by the majority for the proposition that the blunt in question was immediately incriminating. But the actual facts in *McLevain* involved a narcotics detective who seized certain items—a cut cigarette filter, a prescription bottle with fluid, a spoon, and a twist tie—that were, in his experience, commonly associated with the use of methamphetamine. Yet this court held that "[t]he connection between these items and illegal activities . . . is *not enough* to render these items intrinsically incriminating." *Id.* at 442 (emphasis added).

In view of the ruling that the *McLevain* facts were insufficient to satisfy the "plain view" exception to the prohibition against a warrantless search, how can the object that Hart conceded looked like a regular cigar from where he initially stood be considered "incriminating on its face"? There is no way.  I would therefore suppress the seizure of the blunt and thus **REVERSE** the judgment of the district court.