NOT RECOMMENDED FOR PUBLICATION

File Name: 04a0135n.06
Filed: November 30, 2004

**No. 03-6241**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

                                **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE**

**ERIC D. WALLS,**                       **WESTERN DISTRICT OF TENNESSEE**

     **Defendant-Appellant.**

_____/


**BEFORE:**     KEITH, CLAY and COOK, Circuit Judges.

     **CLAY, Circuit Judge.** Defendant Eric D. Walls appeals from the September 18, 2003

judgment of the United States District Court for the Western District of Tennessee, convicting him

of being a felon in possession of ammunition shipped in interstate commerce in violation of 18

U.S.C. § 922(g). For the reasons set forth below, we **AFFIRM** Defendant's conviction.

**BACKGROUND**

*Procedural History*

     A federal grand jury indicted Defendant on February 24, 2003, on the charge of being a

felon in possession of ammunition shipped in interstate commerce in violation of 18 U.S.C. §

922(g). Defendant filed a motion to suppress evidence before the district court on May 22, 2003.

A suppression hearing was held on June 30, 2003, at which time the district court issued an oral

ruling denying Defendant's motion. Defendant subsequently pleaded guilty to the felon in possession charge, but reserved his right to appeal the district court's suppression ruling. On September 17, 2003, the district court sentenced Defendant to 46 months imprisonment.

Defendant timely appealed to this Court on September 19, 2003.

### *Substantive Facts*

On August 16, 2002, Defendant was identified as a suspect in a residential burglary. Based upon that identification, an investigator from the McNairy County Sheriff's Department obtained a warrant for Defendant's arrest on August 22, 2002. Sergeant Jim Replogle of the Selmer Police Department was notified of the warrant, and was asked to locate Defendant.[1] Along with two other officers, Replogle went to Defendant's home armed with the arrest warrant.

Replogle arrived at Defendant's residence around 10:00 p.m. and knocked on the door. Defendant answered, and was informed by Sergeant Replogle that he had a warrant for Defendant's arrest. Defendant was then arrested on the front porch. At the time of the arrest, Defendant was barefoot, and he requested to return inside the house to get his shoes. Replogle consented, and accompanied Defendant back into the house.

Once inside Defendant's home, the facts become disputed. Defendant claims that Sergeant Replogle telephoned another officer, told that person that he had arrested Defendant, and asked whether he should search Defendant's home. Sergeant Replogle claimed that he did telephone his colleague, Sergeant Weaver, to report on the situation at Defendant's home and ask what action

---

[1]Sergeant Replogle was familiar with Defendant due to a previous incident where Defendant was the victim of a crime; consequently, Replogle had been to Defendant's home, and could easily identify him.

should be taken next. However, Replogle maintained that he telephoned Weaver after Defendant had consented to a search of his home, and after Replogle discovered contraband.

The district court found that Sergeant Replogle's version of the events was credible. Replogle testified that shortly after he effectuated the arrest, he asked Defendant whether he "had anything in the house that he shouldn't have," to which Defendant responded "no." Replogle then asked Defendant "do you mind if I take a look," and Defendant said "go ahead." It is undisputed that during his search of Defendant's home, Replogle discovered a box of CCI Blazer Ammunition, containing sixteen .380 caliber rounds, on the dresser in Defendant's bedroom. No gun or other contraband was uncovered in Defendant's home.

Sergeant Replogle contended that he advised Defendant of his *Miranda* rights before leaving Defendant's home, and again after he took Defendant to the police station. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Defendant claims that he was not read his rights before arriving at the police station, and although he concedes that he was given *Miranda* warnings at the police station, he claims that the warnings came after he had already given an incriminating statement. That statement reads, "The bullets that were found in my house I had bought at a pawn shop across from Phillips 66. At the time I bought them I had been assaulted the night before."

It is undisputed that Defendant gave the written statement and also signed a *Miranda* waiver form, however the timing of the warnings, waiver and statement are disputed. Defendant's written statement is marked with a time of 22:25 hours; his waiver form is marked 22:30 hours. Defendant argues that he first gave the written statement, then Sergeant Replogle read him his rights, and lastly,

3

he executed the *Miranda* waiver. Replogle claimed that the sequence of events was first warning, then statement, and lastly signing of waiver. The district court again credited Replogle's version.

Before the district court, Defendant moved to suppress the bullets and his written statement, claiming that the bullets were the fruit of an illegal search and the statement was given without the benefit of *Miranda* warnings. After both Defendant and Sergeant Replogle testified, the district court issued an oral ruling denying the motion to suppress evidence. The court based its ruling on witness credibility, finding that Sergeant Replogle was simply a more believable witness.

## DISCUSSION

The only issue presented for our review is whether the district court erred in denying Defendant's motion to suppress evidence. We review the district court's factual findings on a suppression issue for clear error, and its legal conclusions *de novo*. *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002); *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998). Under the clear error standard, we will accept the district court's factual findings absent a "'definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez*, 301 F.3d 666, 668 (6th Cir. 2002) (*quoting United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *accord United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999). Additionally, when a district court denies a motion to suppress, "we consider the evidence in the light most favorable to the government." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (*en banc*).

A. **Consent to Search**

4

"It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search." *Carter*, 378 F.3d at 587 (*citing United States v. Davis*, 328 U.S. 582, 593-94 (1946)). In order for consent to be valid, the prosecution must show that it was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *see also Worley*, 193 F.3d at 385 ("We note at the outset that '[i]t is the [g]overnment's burden, by a preponderance of the evidence, to show through clear and positive testimony' that [defendant's] valid and voluntary consent to the search was obtained.") (*quoting United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996)). Whether consent was 'freely and voluntarily given' is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Carter*, 378 F.3d at 587.

We do not find that the district court's decision on consent was clearly erroneous. The only evidence on the question was the competing testimony offered by Defendant and Sergeant Replogle. In weighing that evidence, the district court made a factual determination that Sergeant Replogle was the more credible witness. We have previously noted that "findings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (*en banc*); *see also United States v. Davis*, 306 F.3d 398, 423 (6th Cir. 2002) (noting that "appellate courts generally do not review the district court's determinations regarding witness credibility"). Deference is afforded to the district court's credibility determinations because the district court "was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999); *accord United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002); *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998). "[P]recisely

because testimony often becomes more ambiguous when reduced to toneless words on a page, we defer to the district court's factual finding." *Carter*, 378 F.3d at 589.

Defendant has not made any convincing arguments before this Court that would cause us to take the unusual step of setting aside the district court's credibility determination. Defendant argues that *Schneckloth* stands for the proposition that the failure to advise a suspect of his constitutional right to refuse a search should be taken into account in determining whether consent was freely and voluntarily given. It is true that *Schneckloth* mentions failure to advise as a non-determinative factor in the totality of the circumstances analysis, but "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth*, 412 U.S. at 227. Additionally, the Supreme Court's more recent holding in *Ohio v. Robinette* undercuts the notion that the failure of law enforcement officers to advise a suspect of his right to refuse consent to search vitiates voluntariness. *Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (holding that the Fourth Amendment does not require law enforcement officers to advise seized individuals that they are free to leave prior to requesting consent to search).

Defendant also argues that the government has not met its burden of proving free and voluntary consent because acquiescence to an officer's claim to lawful authority is not valid consent. While that statement is legally correct, *see, e.g., Bumper*, 391 U.S. 543, the facts of this case do not demonstrate mere acquiescence. We have previously characterized the government's burden in this regard as establishing that a suspect's purported consent "was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistence to

authority or acquiescing in the officers' request." *Worley*, 193 F.3d at 386 (*citing United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981)). In *Worley*, this Court found that the government failed to meet its burden of demonstrating that "you've got a badge, I guess you can [search]" equaled free and voluntary consent. *Id.* By contrast, Defendant's statement of "go ahead" is almost exactly the same as the expression of consent deemed acceptable in *Schneckloth*. 412 U.S. at 220 (noting expression of consent as "Sure, go ahead"). In addition, the district court here found that Defendant consented to the search because in his mind the bullets were not going to be a problem. The court opined that Defendant's subsequent discovery that the bullets were a problem "brought about the divergence in testimony about what happened." This conclusion demonstrates that the district court was satisfied the government met its burden of proving free and voluntary consent, and we do not believe this conclusion was clearly erroneous.

There is no evidence in the record that suggests to us that the district court erred in believing Sergeant Replogle's testimony over Defendant's. Thus, we find no basis for reversing the district court's determination that Defendant freely and voluntarily consented to a search of his home.

**B.** *Miranda* **Warnings**

It is without question that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised on his or her *Miranda* rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (*citing Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)). As with the waiver of consent to search, the government has the burden of proving that a defendant validly waived his or her *Miranda* rights. *See Seymour v. Walker*, 224 F.3d 542, 544 (6th Cir. 2000). In order for a *Miranda* waiver to be valid, it must be

voluntary, knowing and intelligent, under the totality of the circumstances. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (*citing Pennsylvania v. Muniz,* 496 U.S. 582, 589, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990)). Additionally, "there must be an element of police coercion in order for a waiver to be found involuntary." *Seymour*, 224 F.3d at 554 (*citing Colorado v. Connelly*, 479 U.S. 157, 169-70, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986)).

Defendant does not appear to argue that he did not knowingly, intelligently and voluntarily waive his *Miranda* rights, or that his statement was coerced in any way. Rather, he argues that the government has failed to meet its burden of proving that Defendant received any *Miranda* warnings at all prior to giving his statement. However, we think that it is clear from the district court's suppression ruling that the court was convinced, based on Sergeant Replogle's testimony and the waiver form with Defendant's signature on it, that Defendant was duly informed of his rights and validly waived them. As with the consent issue, Defendant's argument boils down to a request that this Court take the extraordinary step of setting aside the district court's credibility determination. However, there is nothing in the record to suggest that under the totality of the circumstances, the district court's ruling was clearly erroneous.

We find further support for our decision here in one of our prior cases with very similar facts. *See United States v. Brown*, 66 F.3d 124 (6th Cir. 1995). In *Brown*, the defendant claimed that she signed a *Miranda* waiver after questioning, but the officer maintained that she was apprised of her rights before being questioned, and that she understood, agreed to and signed a waiver at that time. Consequently, this Court found that "the district court was not clearly erroneous in concluding that

8

*Miranda* did not bar the admission of the statement." *Id.* at 26. Likewise, the district court here was not clearly erroneous in accepting Sergeant Replogle's explanation over Defendant's testimony.

Further, although Sergeant Replogle conceded that Defendant did not sign the waiver form until after questioning, there is "no authority . . . for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights." *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002); *cf. United States v. Eicher*, 927 F.2d 605, 1991 WL 29199 at **2 (6th Cir. 1991) (unpublished table decision) ("We find the law to be clear that the failure to sign a waiver after *Miranda* warnings have been given, does not render subsequent statements inadmissible."); *United States v. Vaughn*, 496 F.2d 622, 622 (6th Cir. 1974) ("[R]efusal to sign a written waiver, standing alone, does not render inadmissible statements or evidence voluntarily given after full warnings.").

## CONCLUSION

There is no basis in the record for us to find clear error in the district court's ruling that Defendant consented to the search of his home and was duly informed of, and voluntarily waived, his *Miranda* rights. Therefore we **AFFIRM** Defendant's conviction under 18 U.S.C. § 922(g).