**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0116n.06

No. 14-5617

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ROBERT DALE ANDREWS; PATTI ANDREWS, | ) ) ) | **FILED** **Feb 09, 2015** DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE MIDDLE DISTRICT OF TENNESSEE |
| HICKMAN COUNTY, TENNESSEE, et al., | ) ) |  |
| Defendants-Appellees. | ) |  |

BEFORE: GIBBONS and SUTTON, Circuit Judges; and ADAMS, District Judge.[*]

PER CURIAM. In 2009, Robert Dale Andrews and Patti Andrews of Hickman County, Tennessee, sued the county, three social workers, and reserve police officer Paul Wade for allegedly violating the Constitution during a visit to their home. After an interlocutory appeal, this court granted qualified immunity to all the defendants but Wade, as we believed a reasonable jury could find that Wade entered the couple's home without a warrant and without their consent, in violation of their clearly established Fourth Amendment rights. *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 856 (6th Cir. 2012). In the trial that followed, the jury found that the couple did consent to Wade's warrantless entry into their home; he therefore did not violate their Fourth Amendment rights. R. 110 at 1591. The couple now appeals. We affirm the judgment upholding the jury's verdict.

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

At issue during trial was whether Dale or Patti Andrews gave Paul Wade consent to enter their home without a warrant. After testimony in which Wade explained that he thought Dale Andrews implicitly invited him in, *see* R. 125 at 2018, the judge instructed the jury, without objection, that an individual may consent to a search with "words, gestures, or conduct," R. 126 at 2153. The jury concluded that the couple consented to Wade's entry. R. 110 at 1591. The couple now offers us four reasons for overturning the jury's finding—two of which were not properly preserved for appeal and two of which are unpersuasive.

The first two objections are to the judge's instructions to the jury. First, the couple challenges the premise that "consent to a search may be in the form of words, gesture, or conduct," as this court held in *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (quotation omitted). Second, the couple argues that the judge should have instructed the jury on the definition of "curtilage" and explained that the Fourth Amendment protects the land surrounding one's home. R. 101 at 1549. But even if we had the authority to overturn the en banc decision in *Carter* or believed that a definition of curtilage would have aided the jury's deliberation, the couple did not object to the judge's instructions when asked about them. *See* R. 126 at 2112–16. These arguments are therefore forfeited. Our power to review forfeited claims is discretionary, and we will only exercise it in "exceptional cases" or when the failure to do so would result in a "plain miscarriage of justice." *Foster v. Barilow*, 6 F.3d 405, 407–09 (6th Cir. 1993); *see Greco v. Livingston Cnty.*, No. 14-1203, 2014 WL 7240680, at *3 (6th Cir. Dec. 19, 2014).

The couple's third objection is to the jury verdict itself. In a motion for a new trial before the district court, the couple argued that the jury's finding of consent was "against the weight of the evidence," *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000), because the

couple never verbally invited Wade into their home. But as noted above, consent does not require a verbal invitation; it may also be in the form of a "gesture" or "conduct." *Carter*, 378 F.3d at 587. Wade explained at trial that he believed the couple's conduct was just such an implicit invitation. The jury did not clearly err by agreeing.

Finally, the couple argues that the district court should have stricken the testimony of Deputy Kyle Chessor, who admitted at trial that he spoke to Wade after Wade's testimony in violation of the court's sequestration rule. *See* Fed. R. Evid. 615. At the time, the court determined that the violation was harmless because Chessor's testimony differed from Wade's (so there was no evidence of collusion) and Chessor's testimony had no bearing on the jury's factual findings (so there was no evidence of prejudice). R. 121 at 1862. That decision was well within its discretion. *See United States v. Gibson*, 675 F.2d 825, 836 (6th Cir. 1982) ("If a witness disobeys [a sequestration] order . . . he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground [alone] . . . ." (quoting *Holder v. United States*, 150 U.S. 91, 92 (1893)). Hence, it was not an error.

For these reasons, we affirm.