NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0371n.06

No. 23-5740

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 25, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| JAVIER ALEJANDRO CEJA-TORRES, | ) | DISTRICT OF KENTUCKY |
|  | ) | |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |
|  | ) | |

Before: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Javier Ceja-Torres appeals the district court's denial of his motion to suppress drug-trafficking evidence discovered during a traffic stop. Because the stop was not unlawful when initiated, and because Ceja-Torres consented to the search, we affirm.

I.

While on patrol, Kentucky State Police Trooper Ethan Whitlock observed a vehicle with tinted windows and a license plate frame covering part of the vehicle's registration sticker, in violation of Kentucky law. After noticing Whitlock's patrol car, the driver—defendant Javier Ceja-Torres—slowed down, changed lanes, and exited the interstate. Whitlock ran the license plate through a database and learned that the vehicle was registered to a woman in Arizona and had recently made numerous cross-country trips between Arizona and Georgia. Based on his

training and experience, Whitlock believed the vehicle was possibly involved in criminal activity such as drug or human trafficking.

Whitlock commenced a traffic stop. When he approached the driver's window, he saw open beer cans on the passenger's floorboard. Ceja-Torres and the passenger presented Mexican identification, and Whitlock discerned neither was fluent in English and that Ceja-Torres did not have a valid driver's license. Like he did on other occasions with non-English-speaking individuals, Whitlock asked Ceja-Torres to exit the vehicle and used the Google Translate application to ask questions. Whitlock typed questions in English, the application translated them to Spanish, and he showed the written Spanish questions to Ceja-Torres, who answered verbally in English. During the conversation, Ceja-Torres paced in front of the cruiser, appeared nervous, and smelled of alcohol. Whitlock tried to calm his nerves by assuring him that he would not receive a ticket for not having a driver's license.

Because Trooper Whitlock smelled alcohol, he administered a portable breath test. Ceja-Torres's blood alcohol content was below the legal limit, but Whitlock still suspected criminal activity. He asked Ceja-Torres if there was anything illegal, such as drugs or weapons, in the vehicle. Ceja-Torres shook his head "no." Unconvinced, Whitlock followed up by asking for permission to search the vehicle. Ceja-Torres nodded "yes." Whitlock found illegal drugs in the car.

A grand jury indicted Ceja-Torres on three charges: reentry after deportation/removal, conspiracy to possess with intent to distribute methamphetamine, and conspiracy with intent to distribute cocaine. Ceja-Torres moved to suppress the evidence obtained from his car. After a suppression hearing, a magistrate judge recommended denying the motion. Over Ceja-Torres's objections, the district court adopted the magistrate judge's report and recommendation and denied

the motion. Ceja-Torres conditionally pleaded guilty, and the district court sentenced him to 108 months' imprisonment. This appeal followed.

## II.

Defendant asserts the district court erred in two respects when it denied his motion to suppress. First, he argues that Trooper Whitlock improperly expanded the scope of the traffic stop beyond minor traffic infractions without reasonable suspicion of criminal wrongdoing. Second, he contends that the government failed to prove that he consented to the search.

When considering a district court's decision regarding a suppression motion, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008). Because the district court denied the motion to suppress, we consider the evidence in the light most favorable to the government. *Id.*; *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). And viewing the evidence through that lens, we conclude that the district court properly denied Ceja-Torres's motion to suppress.

## A.

We begin with the scope of the traffic stop. Courts analyze the legality of traffic stops under the framework of *Terry v. Ohio*, 392 U.S. 1, 30 (1968), which permits an officer to conduct a brief investigatory stop without a warrant if he has reasonable suspicion of criminal activity, *Campbell*, 549 F.3d at 370. Whether there was reasonable suspicion of criminal activity to justify the continuation of the *Terry* stop is a mixed question of law and fact, which we review de novo. *Id.* "Once the purpose of an ordinary traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) (citation omitted). Reasonable suspicion "requires more than a mere

hunch" but "less than probable cause." *Campbell*, 549 F.3d at 370 (citation omitted). In this reasonable-suspicion analysis, we look at the totality of the circumstances. *Perez*, 440 F.3d at 371.

Ceja-Torres does not dispute that Whitlock had probable cause to stop his vehicle based on traffic violations. Rather, he contends that Whitlock prolonged the stop without reasonable suspicion. In his view, the stop should have ended as soon as he handed over his documentation. But an officer is permitted to ask a driver to exit the vehicle during a traffic stop so that the officer can ask "context-framing" questions "relating to travel plans, the driver's authority to operate the vehicle, or the safety of the officer." *United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012). That is exactly what happened here: Whitlock asked Ceja-Torres to step outside the vehicle so that Whitlock could use Google Translate to ask Ceja-Torres where he was driving from and to and how long he planned to stay. This was not unreasonable or violative of the Fourth Amendment.

Moreover, "the Constitution does not mandate that a driver, after being lawfully detained, must be released and sent on his way without further questioning once the detaining officer has concluded the original purpose of the stop." *United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (citation omitted). Early during the traffic stop, Whitlock observed numerous beer cans on the vehicle's floor and that Ceja-Torres smelled of alcohol. Based on these observations, it was reasonable for Whitlock to ask questions beyond the scope of the original traffic infractions and to administer a breathalyzer test. *See id.* at 602; *Perez*, 440 F.3d at 370.

Ceja-Torres argues that the traffic stop should have ended, at the latest, after Whitlock administered the breath test and confirmed that he was not driving impaired. We need not address whether the circumstances, at that point, justified an extension of the stop and a search of the

vehicle because, as discussed below, Ceja-Torres consented to the search of his vehicle. *See Canipe*, 569 F.3d at 601–02.

B.

The government must prove "through clear and positive testimony" that the consent was "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *Id.* at 602 (citations omitted). In determining whether consent was voluntary, we consider factors including the defendant's age, intelligence, and education, as well as the length and nature of the detention and coerciveness of the questioning. *See id.* at 603. And when, as here, the defendant and interrogating officer speak different languages, "the quality and appropriateness of a translation is an important consideration for a reviewing court in determining whether consent was voluntary." *United States v. Hernandez*, 443 F. App'x 34, 41 (6th Cir. 2011). This factual inquiry is based on the totality of the circumstances, and we will reverse the district court's findings only if they were clearly erroneous. *Canipe*, 569 F.3d at 602. Additionally, we give "particular deference" to the district court's credibility findings because it observed the witness's testimony and demeanor firsthand. *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006).

Crediting Whitlock's testimony, the district court concluded that "Ceja-Torres held a lengthy conversation with law enforcement without confusion, which was facilitated by their use of the Google Translate application." That was not clearly erroneous.

When Whitlock asked if he could search the vehicle, Ceja-Torres nodded "yes"—a form of valid consent. *See United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (noting that "words, gesture, or conduct" can convey valid consent). He did not use coercion, threats, or intimidation to gain this consent. And although Whitlock did not tell Ceja-Torres that he could

refuse consent, such knowledge is not "the sine qua non of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

Nor did the language barrier invalidate consent. Whitlock has used Google Translate on other occasions and in his experience, Spanish speakers understood the translations and when they did not, their confusion was obvious. Ceja-Torres did not demonstrate any such confusion. To the contrary, Whitlock testified that Ceja-Torres understood the translated questions and responded appropriately in English. Whitlock used "direct" language to avoid any confusion with the translation. Whitlock's approach comports with our caselaw finding valid consent in cases involving non-English speakers under similar, if not more suspect, circumstances. *See, e.g.*, *United States v. Ayoub*, 498 F.3d 532, 542–43 (6th Cir. 2007) (finding consent to search where officers testified that non-native English speaker "nodded her head in understanding," "appeared that she understood what was going on," and responded in English to officers' questions); *Hernandez*, 443 F. App'x at 41 (holding that the incorrect Spanish translation of the word "search" on a consent-to-search form did not invalidate consent to search a home).

Ceja-Torres pushes back on this conclusion, arguing that even direct, simple language can result in mistranslations. To illustrate, he provided screenshot examples of Google Translations gone awry by, for example, mistranslating the English word "search" to the Spanish word for "register." We appreciate that hypothetical concern, but there is no evidence of mistranslation here. Nothing about Ceja-Torres's demeanor indicated confusion, which would have been expected if the translation read, "Will you allow me to register your vehicle?" And mere speculation does not constitute clear error. *Hernandez*, 443 F. App'x at 41. Based on the totality of the circumstances supporting Ceja-Torres's understanding of the situation, as well as the lack

of any evidence indicating that the use of Google Translate caused an inaccurate or improper translation, we cannot conclude that the district court committed clear error.  *See id.*

### III.

We affirm the district court's denial of Ceja-Torres's motion to suppress.