RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-3446

SHAWN P. PARRISH,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cr-00243-1—Algenon L. Marbley, District Judge.

Argued: October 24, 2019

Decided and Filed: November 1, 2019

Before: SUTTON, COOK, and THAPAR, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John Endresen, Tyler J. Owen, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** John Endresen, Tyler J. Owen, Melissa M. Salinas, UNIVERSITY OF MICHIGAN LAW SCHOOL, Ann Arbor, Michigan, for Appellant. C. Mitchell Hendy, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Police executed a search warrant at Shawn Parrish's house after detecting that an IP address associated with his home had downloaded child pornography.

The search turned up nude videos of Parrish's twelve-year-old daughter on his cell phone. A jury convicted him of receiving and possessing child pornography, and a prior related conviction triggered a sentence enhancement. Parrish appeals his conviction, arguing that the search of his cell phone violated the Fourth Amendment and that the child pornography statute is void for vagueness. He also appeals his sentence, arguing his prior conviction exceeded the mandatory minimum's scope. The district court rejected each argument. We affirm.

I.

In August 2016, officers executed a search warrant at 87 Daugherty Circle in Newark, Ohio. Days earlier, investigators with Franklin County's Internet Crimes Against Children Taskforce had detected child pornography being downloaded via peer-to-peer file-sharing software. They traced the downloads to an IP address belonging to Brenda Meckley, who lived at 87 Daugherty Circle. Ms. Meckley lived there with two other people, Jerimiah Wigle and Shawn Parrish. The taskforce thought Parrish might be responsible for the downloads due to his prior North Carolina conviction for "indecent liberties with children." N.C. Gen. Stat. § 14-202.1(a)(1).

Special Agent Nate Simon, a member of the task force, prepared a warrant application, which included a detailed affidavit and two attachments. The affidavit explained what the officer knew about the downloads and about the storage of child pornography. Attachment A listed evidence the task force hoped to find, such as "visual depictions of minor(s) engaged in sexually explicit conduct, child pornography or child erotica." R.122 at 23. Attachment B detailed the places to be searched, including "[t]he residence . . . [and] all its appurtenances, parking areas, outdoor working areas, and detached buildings, and any computers or digital media located therein." *Id.* at 24.

When the taskforce executed the warrant, Parrish and two other residents came to the front door and let the officers enter the house after learning that they had a warrant. Eleven or twelve officers conducted the search. Before long, two officers—Special Agent Simon and Investigator Amanda Saxton—asked if Parrish would speak to them in their mobile forensic lab.

Parrish agreed, following the officers to the mobile lab. Both officers carried sidearms, and Saxton wore a bulletproof vest.

The mobile lab is a modified truck with a cab and two segments in the back. The front segment contains forensic gear and controls for the audio and video equipment. The rear segment is an interview room, which has a table with bench seats on either side. The lab was new and had been used just a few times before.

So new, its audio equipment created challenges for the officers. During the interview, one of them pushed the mute button, turning off the audio recording. That meant Parrish's interview was captured on video alone.

After introducing themselves, Simon and Saxton explained that they were at Parrish's home to execute a search warrant for child pornography and gave Parrish a form spelling out his *Miranda* rights. Everyone, including Parrish, agrees that Parrish told the agents he understood the form.

Simon explained to Parrish "what devices we would be looking at, you know, whether it's laptops, cell phones, thumb drives, hard drives." R.37 at 78. Parrish admits he volunteered that he had nude pictures of his 12-year-old daughter on his cell phone. Either before or after this statement—the record points in both directions—Simon asked Parrish for his cell phone. He gave it to them, and Simon asked Parrish to change the phone's password to a simple one.

After Parrish changed the password to 1-2-3-4, Simon scrolled through the cell phone's contents and located the videos. In response, Parrish explained what would become his defense theory at trial: that he had discovered the videos on his daughter's phone after she sent them to a man on Facebook, prompting Parrish to copy them to his own phone to confront her about the risks of such behavior. Because his daughter lived with her grandparents, he said he needed to preserve the videos so he could confront her about them later.

The interview lasted about 30 minutes. At the end, Parrish signed a consent form authorizing the police to search and seize his daughter's cell phone to confirm his story that she had taken the nude videos herself. The agents also seized his phone.

Forensic evidence confirmed part of Parrish's story. His daughter had sent the images to a man on Facebook, and most of the videos on Parrish's phone originated on his daughter's phone. But he had taken at least one inappropriate video of her on his own. And analysis showed that he hadn't just saved the videos on his phone; he had watched them repeatedly, on different days at different times, and had taken screenshots of them. Nor, when he had the chance, did he confront his daughter or her grandparents about the videos she created.

A jury convicted Parrish of receiving and possessing child pornography. 18 U.S.C. § 2252(a)(2), (a)(4)(B). At the prosecution's request, the district court dismissed the possession charge to avoid the risk of a double jeopardy violation. Parrish received a sentence of 180 months on the remaining count, the mandatory minimum for someone with a prior offense relating to "abusive sexual conduct involving a minor." 18 U.S.C. § 2252(b)(1).

II.

Parrish's challenge to the search implicates three questions: Did the warrant authorize officers to search Parrish's phone? If not, did the officers have a reasonable, good-faith belief that the warrant authorized the search? *United States v. Leon*, 468 U.S. 897, 905 (1984). If not, did Parrish consent to the search?

*Warrant authorization.* There are two sides to the warrant-authorization question. On one side, the warrant permitted officers to search "any computers or digital media" in Parrish's house or "its appurtenances, parking areas, outdoor working areas, and detached buildings." R.122 at 6. Dictionary definitions suggest that a cell phone counts as a form of digital media. A medium, in the relevant sense, is "something (as a magnetic disk) on which information may be stored," Merriam-Webster Unabridged Online (2016), or a "physical material (as tape, disk, paper, etc.) used for the storage of data," Oxford English Dictionary Online (3d ed. 2019). Appending the adjective "digital" just changes the kind of data being stored. Cell phones store digital information, seemingly bringing them within the scope of the warrant's permission to search "digital media" in Parrish's house. Pointing in the same direction, the warrant covered "[a]ny visual depiction of minor(s) engaged in sexually explicit conduct." R.122 at 5. Ordinarily, police executing a warrant of a house may search anywhere

there is probable cause to believe an item described in the warrant might be found, unless the warrant adds location restrictions. *See Horton v. California*, 496 U.S. 128, 140–41 (1990); *United States v. Ross*, 456 U.S. 798, 823–24 (1982). This warrant did not include location restrictions.

On the other side, the warrant did not explicitly permit a search of persons (and any cell phones on them), an easy enough request and a rather obvious one when it comes to a search for evidence of child pornography. So obvious, the officers sought authority to search "any persons, computers, and computer related media" located at 87 Daugherty Circle. R.122 at 22. But the magistrate, for reasons of his own, granted authority only to search the premises plus the "computers or digital media located therein"—and did not mention permission to search persons. *Id.* at 6. We need not decide which side of this complex debate is the correct side.

*Good faith.* A difficult question of warrant construction makes for an easy question of *Leon* application. Under *Leon*, courts will not exclude evidence from trial that was seized "by officers reasonably relying on a warrant issued by a detached and neutral magistrate." 468 U.S. at 913. Even if the warrant technically did not permit a search of Parrish and the cell phone on him, the officers reasonably could have believed it did.

As just shown, the ordinary meaning of the terms used in the warrant—authorizing the search and seizure of "digital media"—covers a cell phone. We thus could not fault an officer for thinking, reasonably, that it reached cell phones. Confirming the customary use of this language, one officer at trial used the phrase "digital media" to describe his area of expertise. R.116 at 230. When asked to explain to the jury what that meant, he said it included "[c]omputers, mobile devices, such as cell phones, digital cameras, [and] flash drives." *Id.* at 231. No contrary testimony appears in the record of the trial or of the suppression hearing. The unchallenged common meaning of "digital media" to a reasonable officer on the task force executing the warrant included cell phones, placing this case within *Leon*'s boundaries.

The officers had a second reasonable basis for searching the cell phone. The warrant permitted them to search for child pornography anywhere on the premises they had probable cause to think it might be found. Because that description includes cell phones, a "reasonably

well-trained officer" executing the warrant could have reasonably believed that he was acting within its scope. *United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019).

*Consent.* One other ground exists for affirming the district court's decision. Parrish consented to the seizure and search of his cell phone.

A 360-degree view guides us in determining whether an individual voluntarily consented to a search or seizure. Relevant considerations include the characteristics of the person being interviewed—age, education, intelligence—and the circumstances of the situation, like whether the police told him about his constitutional rights, how long the interview lasted, and whether police asserted authority to take the action regardless of consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (collecting cases).

Whether consent was voluntary is a question of fact. *Id.* at 227. Clear-error review thus applies to the finding. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).

The district court did not clearly err when it found that Parrish consented to handing over his cell phone. Parrish voluntarily followed the officers into the mobile lab for an interview. At the beginning of the interview, Parrish read the *Miranda* warnings the officers provided him. Special Agent Simon testified, and the video confirmed, that the interview was low key and conducted in a cooperative spirit. The officers did not restrain Parrish. Nor did they lock the door to keep him inside the mobile lab. Investigator Saxton testified that, had Parrish tried to leave or otherwise end the interview, the officers would have let him. Parrish worked with the officers to remove the passcode from his phone and change it. And the record contains no evidence, as the district court found, that the officers told Parrish the warrant covered the cell phone before asking for his consent to search it.

Parrish insists that *Bumper v. North Carolina* establishes that any time police assert lawful authority to take an action, consent to that action becomes coerced and invalid. 391 U.S. 543 (1968). But that's not what *Bumper* held. It ruled that consent in such a situation cannot be proved by "no more than" acquiescence to an assertion of authority. *Id.* at 548–49. Removing all doubt, the Supreme Court later clarified that an assertion of authority to act is one factor, not the only factor, in considering whether consent was voluntary. In *Schneckloth*, the Court

reasoned that *Bumper* renders consent invalid only "if under all the circumstances it has appeared that the consent was not given voluntarily—that it was . . . granted only in submission to a claim of lawful authority." *Schneckloth*, 412 U.S. at 233.

No matter how one reads the cases, the district court at any rate did not clearly err in finding that the police never told Parrish that the warrant allowed them to take his cell phone. Parrish, it is true, testified to the contrary. He said that Simon restrained him, patted him down, and took the phone out of his pocket before putting it back in his pocket and taking him into the mobile lab for the interview. But the district court found that, while Simon may have patted Parrish down before the interview, Parrish's testimony that Simon took the phone out of his pocket and put it back in was not credible. Both officers, it's also true, wore holstered sidearms, and Investigator Saxton wore a bulletproof vest. But these realities, when considered alongside the other circumstances, do not show that the district court clearly erred in finding Parrish was coerced into handing over his cell phone. All in all, Parrish does not have a Fourth Amendment right to exclude the evidence on his cell phone.

III.

Parrish maintains that the relevant statute—defining "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area of any person," 18 U.S.C. § 2256(2)(A)(v)—is unconstitutionally vague. We don't think so.

Criminal statutes violate the Fifth Amendment's due process clause if they are too vague "to give ordinary people fair notice" of the criminalized conduct or "so standardless" as to "invite[] arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The statute clears that bar. The Supreme Court has already given its stamp of approval to this phrase of the statute, describing the vagueness argument as "insubstantial." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994).

Pressing the point, Parrish invokes a purported circuit split over the meaning of "lascivious exhibition," suggesting that it does not give fair notice. While circuit splits sometimes establish ambiguity, they do not necessarily establish vagueness. A statute provides

fair notice "where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). This definition provides plenty of notice on that score.

The apparent circuit split is a mirage anyway. The cited decisions in reality apply the same standard we do. *Compare United States v. Amirault*, 173 F.3d 28, 31–33 (1st Cir. 1999), *with Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002), *and United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009).

IV.

Parrish claims that his 180-month sentence as a repeat offender, *see* 18 U.S.C. § 2252(b)(1), should have been lower because he was a first-time offender. The higher range applies if a defendant has a prior conviction under certain federal statutes "or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *Id.* Parrish has one relevant prior conviction—a state law conviction. North Carolina convicted him of indecent liberties with children in 1998. N.C. Gen. Stat. § 14-202.1(a)(1). At issue is whether this conviction "relat[es] to . . . abusive sexual conduct involving a minor." 18 U.S.C. § 2252(b)(1).

In resolving the question, we apply the categorical approach, most familiar to connoisseurs of the Armed Career Criminal Act but also applicable to the child pornography statute. *United States v. Mateen*, 806 F.3d 857, 859 (6th Cir. 2015). That means we construct a generic version of the crime and compare it to the range of conduct the state law criminalizes. *Id.* Then we look to the sentencing enhancement to determine how close the match must be.

Under the Armed Career Criminal Act, the match must be fairly close. The state crime doesn't trigger the enhancement if its coverage exceeds the generic version of the crime. That's because the Act defines a "violent felony" as "any crime" that "is" one of the named crimes: "burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(b)(ii). The match doesn't have to be nearly as close for the child pornography statute. That's because a state crime triggers the enhancement if it "relat[es] to" the relevant conduct: "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *Id.* § 2252(b)(1); *Mateen*, 806 F.3d at 861.

In our view, as in the district court's view, Parrish's North Carolina conviction is "relat[ed] to" abusive sexual conduct involving a minor. Consistent with our case law and dictionary definitions, it's fair to treat the generic version of "abusive sexual conduct involving a minor or ward" as improper, perverted, or damaging behavior associated with libidinal gratification concerning a minor or ward. *See* Webster's Third New International Dictionary 8 (1981) (defining "abusive" as "characterized by wrong or improper use or action," "perverted," or "physically injurious"); Black's Law Dictionary 13 (10th ed. 2009) (roughly the same); *Mateen*, 806 F.3d at 861 (defining "sexual" as "of or relating to the sphere of behavior associated with libidinal gratification").

Two other circuits agree. The Second and Eighth Circuits have defined the generic crime as "misuse or maltreatment of a minor for a purpose associated with sexual gratification." *United States v. Barker*, 723 F.3d 315, 318, 324 (2d Cir. 2013); *United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009). The Eleventh Circuit has gestured toward a potentially narrower definition, "behaving in a way that harms a minor for the purpose of one's libidinal gratification," but it has not adopted that definition in a precedential decision. *United States v. Johnson*, 681 F. App'x 735, 740 (11th Cir. 2017) (per curiam).

We have no trouble concluding that North Carolina's crime of indecent liberties with children "relat[es] to" this generic crime. The North Carolina crime occurs when someone over 16 and at least five years older than the child "[w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire." N.C. Gen. Stat. § 14-202.1(a)(1). Those elements satisfy the generic definition. Improper, perverted, or damaging behavior? The North Carolina crime requires "immoral, improper, or indecent liberties." *Id.* Associated with libidinal gratification? The crime requires the liberties to have been "for the purpose of arousing or gratifying sexual desire." *Id.* Related to or concerning a minor? The statute criminalizes a subset of cases involving minors—only those in which the child is under 16 and at least 5 years younger than the perpetrator. *Id.* All of this "relat[es] to" the "abusive sexual conduct involving a minor." 18 U.S.C. § 2252(b)(1).

Contrary to Parrish's suggestion, *United States v. Lockhart* does not tell us what "abusive sexual conduct involving a minor" means. 136 S. Ct. 958 (2016). Sure, that case interpreted the same statute. But it answered a different question. *Lockhart* explained that in the list "aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor," the last phrase, "involving a minor," modifies only the last element in the list, "abusive sexual conduct." *Id.* at 962. That point tells us something about the scope of "aggravated sexual abuse" and "sexual abuse," but it does not fix the meaning of "abusive sexual conduct involving a minor."

We affirm.