**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0404n.06

Case No. 19-1627

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 14, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JOSEPH BENJAMIN TAYLOR III, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, WHITE, and DONALD, Circuit Judges.

SILER, Circuit Judge. Joseph Taylor III entered a conditional plea agreement in which he pled guilty to one count of violating 18 U.S.C. § 922(g)(1), but reserved the right to appeal the denial of his motion to suppress firearms seized during a search of his house. He now appeals the denial of the motion. For the following reasons, we affirm.

**I.**

After being released from prison, Taylor was placed on supervised release. His supervised release provided that he "shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer." After Taylor moved to a new residence, his probation officer, Zachary Jabour, made an unannounced visit along with another probation officer, Tonika Cooper, to conduct a home

inspection. During a home inspection, probation officers walk through a residence to ensure that the individual on probation actually lives there, to determine whether anyone else lives at the residence, and to confirm that there is no contraband. Because the terms of Taylor's supervised release did not allow the probation officers to open and search any closed areas of the house, such as closets, the protocol was for the officers to obtain consent to do so.

When the officers arrived, Taylor invited them into his house. The probation officers asked to conduct a walkthrough of the house and Taylor acquiesced. Jabour asked for, and received, consent from Taylor to open a closet in one of the bedrooms on the second floor of the house. Jabour says that he then noticed small doors built into the wall of the bedroom that opened into a crawl space, asked Taylor if he could look inside, and Taylor consented. Taylor says Jabour never asked to look in the crawl space and he never gave consent for Jabour to look inside. Instead Taylor says that, as they were leaving the bedroom, he turned around and "saw Jabour on his knees in the crawl space."

When he looked inside the crawl space, Jabour saw what he believed was the barrel of a shotgun protruding from under a blanket. Jabour then closed the crawl space without touching the shotgun or blanket, cut short the home inspection, and he and Cooper left without mentioning the shotgun to Taylor. Jabour and Cooper drove several houses down, parked their car, and called the local police.

After the police arrived, Jabour called Taylor and asked him to come outside, claiming that he needed to sign some paperwork. Taylor exited his house and was placed in handcuffs. They went back into the house after Taylor requested to speak with them inside to avoid making a scene around his new neighbors. Jabour asked Taylor for permission to search the house, specifically the upstairs, and Taylor consented, saying something to the effect of: "go ahead and search, you

won't find anything." The probation officers searched the house and found two shotguns and two semiautomatic rifles in the crawl space.

Taylor sought to suppress the firearms, arguing that he did not voluntarily consent to the search of his home and the crawl space. The district court denied his motion.

## II.

Taylor asks this court to reverse the denial of his motion to suppress because, he argues, the searches described above "were unreasonable and in violation of the Fourth Amendment." Appellant's Br. at 25. In reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and conclusions of law de novo. *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008).

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Whether a search was reasonable under the Fourth Amendment is a question of law which is reviewed de novo." *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008). "The Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between the police and citizens," including, as relevant here, "consensual encounters." *Id.* at 380. A search does not violate the Fourth Amendment if it is done with voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). Consent is voluntary when it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (quoting *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir 1977)). The district court's findings here that consent was voluntary and regarding the scope of consent are both questions of fact, so are reviewed for clear error. *United States v. Canipe*, 569 F.3d 597, 602, 604 (6th Cir. 2009).

When consent is used as the basis for a search, the scope of the consent determines the permissible scope of the search. *United States v. Garrido-Santana*, 360 F.3d 565, 575 (6th Cir. 2004). The standard for measuring the scope of consent is objective reasonableness—what a reasonable person would have understood by the exchange between the officer and the suspect. *Florida v Jimeno*, 500 U.S. 248, 251 (1991).

Taylor contends that his consent to the home inspection, the search of the crawl space, and the search of his entire house was not voluntary and, therefore, the firearms discovered during those searches should be suppressed.[1]

**A.**

The district court concluded that, under the totality of the circumstances, Taylor voluntarily consented to the home inspection. Taylor contends that he did not freely and voluntarily consent to the home inspection because he erroneously believed that the terms of his supervised release required him to consent. He also argues that the probation officers should have informed him that the terms of his supervised release did not require him to consent to their requests to search closed areas of his house. But Jabour and Cooper were not required to inform Taylor of his right to refuse consent, and his confusion about whether he could refuse is only a factor to be considered in evaluating the totality of the circumstances to determine if his consent was voluntary. *United States v. Beauchamp*, 659 F.3d 560, 571-72 (6th Cir. 2011). So, Taylor's argument amounts to a contention that, in evaluating the totality of the circumstances, the district court should have given more weight to these two factors and less comparative weight to other factors. At best, Taylor has

---

[1] Taylor also contends that inculpatory statements he made while in custody should be suppressed as derivative evidence. Because we find that the search of Taylor's house did not violate the Fourth Amendment, we do not reach this issue.

a reasonable disagreement about how the factors should have been weighed, which is far from establishing that the district court's conclusion that he voluntarily consented was clearly erroneous.

**B.**

Taylor next argues that he did not consent to Jabour's first search of the crawl space—when he observed the barrel of a shotgun protruding from under a blanket—and, alternatively, that he merely acquiesced to a claim of authority, and thus any consent was not voluntary. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (stating that the government's burden to show that consent was voluntary "cannot be discharged by showing no more than acquiescence to a claim of lawful authority"). Based on the findings of the district court and our own review of the record, we do not agree.

Taylor claims that he did not consent to the search of the crawl space, or even know that it was happening when it began. At the evidentiary hearing on the suppression motion, Taylor claimed that he consented to Jabour's opening a closet to look inside but, after that, Jabour opened the crawl space and looked inside without asking for or receiving consent. Jabour, however, testified, "I requested permission to look inside the crawl space and he gave me consent to." The district court found Jabour's version of events—that he asked for and received consent to look in the crawl space—credible and Taylor's not credible, pointing out the inconsistency of Taylor's recollection. Further, Jabour's testimony was supported by Cooper, who testified that she was present and heard Jabour request consent from Taylor to inspect the crawl space. Therefore, it was not clear error for the district court to credit Jabour's version of events rather than Taylor's version of events.

Taylor next contends the district court did not actually find that he consented, but only that he acquiesced to an assertion of authority, because the district court stated in its findings that

Jabour "requested permission to look inside [the crawl space], and [Taylor] *acquiesced*." But the word "acquiesced" can be used to mean explicit permission or consent. *See United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004) (en banc) (concluding, after consulting several dictionary definitions, that the district court "explicitly used 'acquiescence' to mean 'permission'—that is, consent"). There is no doubt that the district court used the word "acquiesced" to mean that Taylor explicitly consented, not that he acquiesced to an assertion of authority. Elsewhere, the district court stated that Taylor "explicitly consented to searches of closed areas during which one of the probation officers saw what he reasonably believed to be the barrel of a firearm hidden under a blanket." The district court also credited the testimony of Jabour, who testified that he "requested permission to look inside the crawl space and [Taylor] gave me consent to."

Further, the district court's determination that Taylor voluntarily consented—and did not merely acquiesce to an assertion of lawful authority—was not clearly erroneous. For consent to be voluntary, the government has to show "an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir 1999). Acquiescence to an assertion of authority is not dispositive as to whether consent was voluntary, but is only a factor to be considered. *United States v. Parrish*, 942 F.3d 289, 294 (6th Cir. 2019). The district court found that, after the probation officers announced the purpose of their visit, Taylor voluntarily invited them into his house for the home inspection, showed them around the house, and explicitly consented to the search of the crawl space. Thus, the conclusion that Taylor's words and actions constituted "an unequivocal statement of free and voluntarily consent" was not clearly erroneous. *Worley*, 193 F.3d at 386.

**C.**

Finally, Taylor contends that his consent to search his house while handcuffed was invalid because: (1) it did not include specific consent to search the crawl space; (2) his consent should be viewed as coterminous with the terms of his supervised release; (3) he merely acquiesced to the search; and (4) the probation officers should have obtained a warrant.[2]

First, Taylor argues that the government presented no evidence that he "specifically consented to opening any closed areas, namely the crawl space." But the court must ask, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. Jabour asked Taylor for permission to search the house, and specifically mentioned the upstairs of the house where the crawl space was located. The district court found that Taylor "said something to the effect, go ahead and search, you won't find anything," and that Taylor thereby "consented to a search of his entire home." According to Taylor, he said "go ahead" and may have said that the officers wouldn't find anything. Taylor knew that the object of the final search was the firearms in the crawl space when he said this and had accompanied the officers during the initial search of the entire home only minutes prior. On this record, it is not clearly erroneous that a reasonable person would have understood Taylor's response as consent to a search of the entire house. *See Jimeno*, 500 U.S. at 251

Second, Taylor claims that the scope of his consent should be viewed as coterminous with the terms of his probation because he did not know he could refuse consent. But knowledge of the ability to refuse consent is only one factor in evaluating the totality of the circumstances.

---

[2] Taylor also contends that the firearms should be suppressed because the previous search of the crawl space violated the Fourth Amendment. Since we find that the prior search did not violate the Fourth Amendment, this argument is moot.

*Bustamonte*, 412 U.S. at 227. Even assuming Taylor did not know he could refuse consent, the conclusion that his consent was nonetheless voluntary is not clearly erroneous.

Third, Taylor argues that he merely acquiesced to an assertion of lawful authority. *See Bumper*, 391 U.S. at 548-49. It was not clearly erroneous to conclude that Taylor stating "go ahead and search, you won't find anything" was "an unequivocal statement of free and voluntary consent" rather than "merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *Worley*, 193 F.3d at 386; *see also Carter*, 378 F.3d at 589 (finding that, when asked for consent to enter a room, stepping back to allow officers to enter constituted voluntary consent and not mere acquiescence).

Fourth, Taylor contends that the probation officers should have obtained a warrant rather than rely on consent because there were no exigent circumstances.[3] A warrant is not required if there is consent. *Bustamonte*, 412 U.S. at 219. Thus, since Taylor's consent was valid, there was no requirement for either a warrant or exigent circumstances.

## III.

Based on the foregoing, we conclude that the search of Taylor's crawlspace did not violate the protections of the Fourth Amendment. AFFIRMED.

---

[3] Taylor's argument appears premised on our reaching a different conclusion regarding the voluntariness of his earlier consent. We nevertheless consider it since his argument is not explicitly premised on it.