NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0412n.06

No. 09-5368

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 27, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| FRANKIE JOE LITTLE, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MARTIN, NORRIS, and SILER, Circuit Judges.

ALAN E. NORRIS, Circuit Judge. Defendant Frankie Joe Little appeals his conviction for the sexual exploitation of a minor, 18 U.S.C. § 2251(a). Defendant was accused of taking four nude photographs of a fourteen year-old girl with the camera of his cell phone. After his motion to suppress evidence was denied by the district court, defendant entered a guilty plea which preserved the right to appeal that decision. He now contends that the district court erred in two respects: first, in holding that he consented to the investigating police officer's warrantless entry into the home of his mother; and, second, in finding that exigent circumstances justified the officer's seizure of his cell phone.

I.

On October 21, 2007, the victim, identified only as I.W., and her guardian arrived at the Lexington, Tennessee police department and spoke with Lieutenant Michael Harper. According to Harper's testimony at the suppression hearing, the guardian, whom he initially misidentified as I.W.'s mother, "wanted to report that her daughter had had some sexually explicit photographs made of her." The guardian indicated that defendant had taken the photographs at his mobile home while I.W. was lying naked on his bed. While speaking to Harper, the victim sent a text message to defendant "that she wanted him to forward the pictures that he had taken of her for her to . . . let a friend observe." Defendant responded via text that he had already deleted them.

Harper went to defendant's home to speak with him; he was not there. He then went to the home of defendant's mother. The officer testified that he knew defendant and his mother. Harper found defendant at his mother's house and explained his purpose while standing on the front porch:

> I advised him that Investigator Scottie Kizer was wanting to speak with him at the police department, and he asked me what about, and I told him I would rather Scottie explain it to him. At that point, he asked me if he did have to go over here, could he drive himself, and I advised him he could drive himself, I would follow him there.

Suppression hearing transcript, July 17, 2008 at 17.

Defendant asked if he could put on a shirt. Harper agreed and followed defendant into the house without asking permission to enter. Defendant's mother and a few children were also present.

According to Harper, he intended to ask for defendant's cell phone. Before he did so, the phone rang and Harper "advised him not to answer the phone, that I wanted to take the phone into my presence [sic] and take it with me." Defendant handed him the phone. Harper did not tell him that he could refuse to give up the phone, nor did he read defendant his *Miranda* rights.

Defendant and Harper drove separately to the police department. After they arrived, Harper directed defendant to Investigator Kizer. He also gave Kizer defendant's cell phone. Later, Kizer summoned Harper back to his office and defendant "brought the pictures up" while the two officers stood nearby to make sure that defendant did not delete them. The pictures were as described by I.W. For his part, Kizer testified that defendant was cooperative throughout the interview and "pulled up" the photographs for Kizer without objection.

As outlined below, the district court denied the motion to suppress. After accepting defendant's guilty plea, it sentenced him to 180 months of incarceration and eight years of supervised release.

**II.**

We review the district court's factual findings for clear error and we may affirm the denial of a motion to suppress on any grounds supported by the record; conclusions of law are reviewed de novo. *See United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009); *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997). Evidence supporting the district court's determination must be seen "in the light most likely to support the district court's decision." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (internal quotation marks omitted). Whether a defendant gave his consent to a search is a factual issue and is therefore reviewed for clear error. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc).

It is axiomatic that valid consent to search constitutes an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government bears the burden of showing by a preponderance of the evidence that the totality of the

circumstances supports a conclusion that consent was given voluntarily. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). Even when a defendant initially declines to consent, her subsequent actions, such as opening the trunk of her car, may indicate consent. *United States v. Flores*, 48 F.3d 467, 468-69 (10th Cir. 1995).

The district court gave the following reasons for its conclusion that defendant consented to Harper's entry into the house:

> Voluntariness is assessed by looking at the totality of the circumstances, including: the age, intelligence and education of the accused; knowledge of the right to refuse consent; and the coercive nature of the police behavior. Courts also consider the degree to which the accused cooperated with the police. *United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002). Voluntary consent must be "uncontaminated by duress, coercion, or trickery." *United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981).

> In this case, there is no evidence that the police used coercion or trickery in an effort to enter the house. By all accounts, Officer Harper merely followed Defendant into the house when Defendant went in to get additional clothing. It was Defendant, not Officer Harper, who asked to go back into the house.

> Furthermore, the search was limited in both scope and duration. This is not a case in which officers sought entry to a suspect's home for the purposes of searching for evidence or making an arrest . . . . Defendant's own testimony indicates that Officer Harper followed right behind Defendant with a flashlight and watched him from the open doorway to the bedroom as Defendant finished getting dressed and gathered his belongings.

> The parties agree that Defendant was cooperative. In *Elkins*, the court's finding of voluntary consent was based in part on th[e] fact that Defendant was cooperative and got police a ladder so they could search the attic. In the present case, Defendant was similarly cooperative. He did not resist Harper's entry into the home. Furthermore, Defendant testified that he retrieved his cell phone from the bedroom while Harper stood in the doorway. He did not attempt to conceal the phone but led Harper directly to it. Like the defendant in *Elkins*, therefore, Defendant's cooperation with the police suggests that he consented to Harper's presence in the home.

> This is not a case in which Defendant conveyed "an expression of futility in resistance to authority" or merely "acquiesced" to the officer's claim of authority. (Def.'s Mem. 15 (citing *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999)). In *Worley*, consent was not voluntary because defendant's response "you've got the badge, I guess you can" indicated a mere acquiescence to the police's claim of lawful authority. 193 F.3d at 38[7]. In the present case, however, there was no dialogue whatsoever about Harper's entry into the house. . . . Neither Defendant nor his mother protested, resisted, or commented.

Order Denying Motion to Suppress, October 2, 2008 at 16-18 (citation omitted).

We agree with the district court's legal analysis in almost every respect. Several factors support its finding that defendant impliedly consented to Officer Harper's entry into the house: 1) he knew the officer; 2) he was cooperative throughout the encounter; 3) he raised no objection when Harper followed him inside, and 4) the intrusion was limited in scope. Had Officer Harper asked for permission to enter and had defendant behaved in the same manner, we would have no difficulty affirming the district court's finding of implied consent. Unfortunately, Harper neglected to do so and logic dictates that a person cannot consent to a request that has not been made – particularly in light of the fact that the government bears the burden of showing that consent was given voluntarily.

Admittedly, we have found valid consent can occur not just by words but by gesture or conduct as well. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc). In *Carter*, officers had suspicion that defendant, who was staying in a Red Roof Inn, was engaged in drug trafficking. They knocked on his door and asked if they could enter. In response, "Carter stepped back and cleared a path for the officers to enter." *Id.* at 587. We reasoned as follows when concluding that the totality of the circumstances supported the district court's conclusion that defendant gave his consent for the officers to enter:

> The investigating officers were instantly recognizable as policemen when Carter opened the door. *They properly asked permission to enter,* and Carter stepped back, letting them in. Any ordinary caller, under like circumstances, would understand assent to have been given, and the police are not held to a higher standard in this regard than an ordinary person.

*Id.* at 588 (citation omitted) (emphasis added). By contrast, in this case Harper neglected to ask for permission to enter and instead, as the district court found, "merely followed Defendant into the house when Defendant went in to get additional clothing." Moreover, he conceded at the suppression hearing that his objection was to secure the cell phone. While this circuit has not considered whether the totality of the circumstances can ever support a finding of implied consent in the absence of an explicit request for permission, the Eleventh Circuit has held that consent cannot be inferred by the simple act of disengaging from conversation with an officer and walking into the house. *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1329 (11th Cir. 2006). As explained earlier, we agree with this approach. Officer Harper had two alternative ways that he could enter the residence in compliance with the Fourth Amendment: obtain a search warrant or *request* and obtain consent from defendant. He did neither and therefore his entry violated the Fourth Amendment and the evidence acquired as a result of that unlawful entry – defendant's cell phone and his subsequent written statements based upon possession of the cell phone – must be suppressed.

Finally, because we conclude that Officer Harper was in the residence in violation of the Fourth Amendment, we need not reach the second issue: whether seizure of the cell phone was justified either by exigent circumstances or the "plain view" exception to the Fourth Amendment. The government concedes that exigent circumstances did not justify the initial entry and, that being the case, the subsequent seizure of evidence was tainted.

**III.**

The judgment of the district court is **vacated**.