NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0483n.06

No. 18-6264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 17, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| MICHAEL JAY HARRIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Law enforcement officers say Michael Harris gave his consent for them to enter his home.  Harris says he did not.  When officers walked through the home, they saw marijuana in plain view that led them also to find methamphetamine.  Harris moved to suppress the methamphetamine but the district court denied his motion.  We **AFFIRM**.

## I.     BACKGROUND

A federal grand jury returned an indictment against Harris charging him with one count of possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Harris moved to suppress the methamphetamine evidence, arguing that law enforcement found it via an illegal search.  On July 3, 2018, the district court held an evidentiary hearing on the motion to suppress.

At the evidentiary hearing, Deputies Michael Gilbert and Larry Wilbanks from the McNairy County Narcotics Unit testified.  Harris also testified.  The three witnesses agree on the

same basic story. On February 13, 2017, officers went to Harris's home to execute an outstanding warrant for his arrest. At least one officer approached Harris's front door, knocked, and informed Harris that there was an outstanding warrant for his arrest. Harris did not initially let officers into his home. Instead, he was placed in handcuffs on the porch near his front door. While in handcuffs, Harris expressed concern that his home should be locked up after he was arrested. Harris explained that when police had searched his home the previous summer on an unrelated matter, they left his doors open and some of his possessions had been stolen.

At least one officer—Gilbert—performed a sweep of the home. Harris's girlfriend, Crystal Bailey, was in the home when Gilbert entered, and she left quickly after gathering her belongings. Gilbert made sure that no one else was in the home and turned off a fan. On his way out, Gilbert noticed a white plastic bag (described by the deputies as a Walmart shopping bag) on the couch. Gilbert testified that he could see, in plain view pressed up against the side of the bag, what he believed to be marijuana. Gilbert opened the bag, confirmed it contained marijuana, and also saw what he believed to be methamphetamine. Gilbert then called another deputy to secure a search warrant for Harris's entire home.

From there, the stories differ in one important, and several tangential, details. Gilbert testified that he initially went to Harris's home with Wilbanks and Deputy Chris Kerr. Gilbert stated that when they arrived at Harris's home, he went around back while Wilbanks and Kerr knocked on the front door. According to Gilbert, Harris "began talking about people that had been left in his residence prior times that he had been arrested and that he wanted everybody out of his residence." Gilbert testified that he and Harris walked through the home so that Harris could "make sure everybody was out and stuff was turned off." Gilbert testified that Officers Kim

Holley, Matt Rickman, and J.P. Kellum arrived after he found the drugs and called for the search warrant.

Wilbanks agreed that three officers initially went to arrest Harris. He testified that Harris asked the officers to secure his home. According to Wilbanks, Harris "asked us if we would remove the people out of the house. And deputies did exactly what we was [sic] asked to do." Wilbanks testified that Harris remained on the porch while officers cleared his home.

Harris testified that he did not give the officers permission to enter his home. Instead, Harris stated that he asked Holley (whom Harris says was present from the beginning) if he (Harris) could go back in and secure his home. Harris wanted to go in and ask Bailey if she was going to stay, and he did not know whether she had a key. When Holley said no, Harris testified that he told Holley that the officers could not enter without a search warrant. According to Harris, Holley told Gilbert to go in anyway. Harris testified that he remained on the porch the entire time and never went back into his home.

Neither Holley nor Bailey testified at the hearing.

Following the evidentiary hearing, the district court denied the motion to suppress. The district court found that Harris voluntarily gave officers consent to enter his home. The district court also found Gilbert and Wilbanks to be credible, and Harris not to be credible. Finally, the district court noted that while the officers testified inconsistently about the details of the arrest and the search of the home, "both officers clearly stated that [Harris] requested the opportunity to secure his home and asked for the officers' help in doing so."

A jury subsequently found Harris guilty. Harris appeals, arguing that the district court improperly denied his motion to suppress.

## II. STANDARD OF REVIEW

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo, considering the evidence in the light most favorable to the government." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (citation omitted). Whether a defendant gave voluntary consent to a search is a question of fact that we review for clear error. *United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015).

## III. ANALYSIS

The district court made a finding of fact that Harris "voluntarily gave officers consent to enter his home." This finding is not clearly erroneous because Gilbert and Wilbanks both testified that Harris gave his consent for them to search his home.

Harris makes two arguments against this conclusion. First, he argues that *United States v. Little*, 431 F. App'x 417 (6th Cir. 2011), demands a different outcome. In *Little*, the officer met the defendant on the front porch of his mother's home. *Id.* at 418. The officer asked Little to come down to the police station for questioning related to suspicion of producing child pornography. *Id.* Before heading to the station, the defendant asked if he could go into the house and put on a shirt. *Id.* The officer said yes and, without asking for the defendant's permission, followed him into the house. *Id.* A panel of this court held that the officer's actions violated the Fourth Amendment because the defendant did not give his permission, either expressly or impliedly. *Id.* at 420–21. Here, the situation is much different. Gilbert and Wilbanks both testified that Harris asked them to enter his home to secure it. Therefore, *Little* is distinguishable from the current case.

Second, Harris asserts that the inconsistencies between Gilbert's and Wilbanks's testimony undercut the district court's credibility finding. This is a steep hurdle for Harris because the district court is "in the best position to judge credibility" and we will not disturb its factual findings when

it plausibly resolves discrepancies in the testimony. *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996). Admittedly, there are several inconsistencies in the testimony. For example, Gilbert testified that Harris accompanied him through the home, while Wilbanks and Harris testified that Harris remained in the doorway. The district court explained that "any inconsistency just goes to the strength of each officer's testimony about how the sweep was carried out, not whether they had [Harris]'s voluntary consent to enter the home." Another example: Crystal Bailey. Harris stated that his girlfriend, who was in the house when the officers arrived, did not have keys to lock up because he had changed the locks after the break-in when he was previously arrested. The district court found it improbable that Bailey would not have keys, although that is consistent with the testimony that Harris wanted his home locked before he was arrested, because his girlfriend would be unable to do so. On balance, the district court concluded "[t]here is good reason to find then that [Harris] was not willing to leave his home without making sure it was locked and that [Harris] gave his consent to the officers to enter the home for the purpose of securing the property."

We see no clear error in the district court's resolution of these discrepancies. At bottom, Harris wanted to make sure his home was secure. Harris asked the deputies to do so, and they did.

## IV.    CONCLUSION

We **AFFIRM** the denial of the motion to suppress.