IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,824

STATE OF KANSAS,
*Appellant,*

v.

GIANNI MASSIMO DAINO,
*Appellee.*

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures.

2.

A warrantless search is presumptively unreasonable unless it falls within a recognized exception to the warrant requirement. Consent to search is one such exception.

3.

The existence and voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances.

4.

The State bears the burden to establish the existence, scope, and voluntariness of the consent to search. To demonstrate valid consent, the State must (1) provide clear and positive testimony that consent was unequivocal, specific, and freely and intelligently given; and (2) demonstrate the absence of duress or coercion, express or implied.

1

5.

Mere acquiescence to a claim of lawful authority, alone, is insufficient to show voluntary consent.

6.

Consent may be found from an individual's words, acts, or conduct, and nonverbal conduct can be a relevant factor in determining the existence of voluntary consent under the totality of the circumstances.

7.

An individual may communicate valid consent through nonverbal conduct, provided such conduct clearly expresses an individual's unequivocal, specific, free, and intelligent consent, in the absence of duress or coercion, under the totality of the circumstances, and does not constitute mere acquiescence to a claim of lawful authority.

Review of the judgment of the Court of Appeals in 57 Kan. App. 2d 653, 458 P.3d 252 (2020). Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed November 13, 2020. Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is reversed, and the case is remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellant.

*Senanem D. Gizaw*, of Johnson County Public Defender's Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

WALL, J.: This case requires us to decide whether an individual may consent to law enforcement's entry into an apartment through nonverbal conduct under section 15 of the Kansas Constitution Bill of Rights.

The State charged Gianni Massimo Daino with several drug-related offenses after a warrantless search of his apartment led to the discovery of marijuana and other incriminating evidence. Daino moved to suppress all evidence seized as a result of the search. The State opposed the motion, arguing Daino's nonverbal conduct evidenced his voluntary consent. The district court granted Daino's motion, concluding as a matter of law that established Kansas precedent forecloses a finding of valid consent based on nonverbal conduct. In a split decision, the Court of Appeals reversed, holding that Daino's nonverbal conduct unequivocally expressed his voluntary consent. Daino petitioned for review, asking this court to decide whether Kansas law forecloses consent through nonverbal conduct. We conclude it does not, and nonverbal conduct can be probative of the existence of consent under the totality of the circumstances under section 15 of the Kansas Constitution Bill of Rights. We affirm the Court of Appeals' decision in part and reverse in part. Further, we reverse the order granting Daino's motion to suppress and remand the matter to the district court for further proceedings in light of the controlling legal standards set forth herein.

FACTS AND PROCEDURAL BACKGROUND

Dispatch sent Officers Robert McKeirnan and Kelly Smith to an apartment complex in response to a complaint about a narcotics odor. At the complex, the officers spoke with a person who said he could smell marijuana coming from apartment number 48. As the officers walked toward that apartment, they could smell marijuana but could not tell where the smell originated. McKeirnan knocked on the apartment door when they

3

arrived, but he did not announce he was a police officer. Both officers were in uniform, but they stood to the side of the door as a general safety precaution.

After about a minute, Daino opened the door a few inches—enough to reveal part of his body but still blocking McKeirnan's line of sight into the apartment. McKeirnan noticed an overwhelming smell of both raw and burnt marijuana coming from the apartment. He told Daino he knew there was a lot of marijuana in the apartment because of the smell. McKeirnan then asked to come in the apartment. According to an audio recording McKeirnan made of the incident, McKeirnan told Daino: "Well, here's the deal, not a huge deal, but I gotta write a ticket if there's marijuana in the house, okay? 'Cause it's illegal, so let me step in with you real quick and we'll get it figured out, okay?"

At the suppression hearing, McKeirnan testified that Daino responded by nodding his head and saying, "Okay. Let's do this." Daino then opened the door as far as it would go and stood out of the way. McKeirnan then clarified he did not recall Daino verbally responding to the request to enter the apartment, but he "assumed that [Daino] was agreeing with me that . . . it was okay for us to come in and take care of the marijuana." McKeirnan confirmed he "[a]bsolutely" believed Daino was allowing him in and "consenting to [his] presence."

At counsel's request, McKeirnan also demonstrated the nonverbal conduct and gestures Daino made in response to McKeirnan's request to enter, using a swinging door near the witness stand for illustrative purposes. The district court later described Daino's nonverbal conduct, as demonstrated by McKeirnan:

> "[W]hen the officer demonstrated what the defendant did in this case, any reasonable person that exists in the United States would have construed his gesture as 'come on in the apartment.'

4

"He opened the door up, and he took his right hand and swung it across his body, and pointed into the apartment. No reasonable person could have construed that as don't come in, or I'm not sure if I want you to come in, or I'm still trying to decide whether I want you to come in. Any reasonable person would have construed that as come on in the apartment."

Smith also testified Daino opened the door and stepped back in response to McKiernan's request to enter the apartment. She also believed Daino was consenting to the officers' entry.

Once inside, McKeirnan asked Daino where the marijuana was located. Daino answered it was in his bedroom and pointed towards his room. McKeirnan said, "I'll go back there and grab that, okay?" and Daino nodded. McKeirnan said he would write Daino a ticket and give him a court date provided there was only a small amount of marijuana and some paraphernalia. Daino responded, "[I]t's a lot of weed."

In Daino's bedroom, McKeirnan saw a safe, medication bottles, some pipes, and LSD blotter paper. He asked Daino to point out the location of the marijuana and Daino complied. McKeirnan did not seize any items at that time. Instead, he asked Daino to sign a consent to search form. The form advised Daino that he had the right to refuse consent to the search. Daino signed the form, purportedly consenting to a search of the apartment except for his absent roommate's bedroom. According to the affidavit, the resulting search uncovered 27 grams of marijuana; 15 Amphetamine/Dextroamphetamine pills; a black notebook which appeared to be a ledger for drug sales; plastic bags of various sizes; a digital scale; $363 in cash; as well as other illegal narcotics and items of paraphernalia.

Given the amount of marijuana the officers recovered, McKeirnan knew he could not simply write Daino a ticket. McKeirnan arrested Daino and read him his *Miranda* rights. Daino then admitted to selling marijuana.

5

According to McKeirnan, Daino was cooperative and compliant throughout the encounter, and he never limited or withdrew his alleged consent. McKeirnan also testified Daino was 18 years of age at the time of the search and was emotionally upset during the interaction. Daino cried at one point, but he was never so upset that he could not communicate with the officers.

The State charged Daino with possession of marijuana with intent to distribute under K.S.A. 65-4105(d)(17), possession of amphetamine under K.S.A. 65-4107(d)(1), and possession of drug paraphernalia under K.S.A. 2019 Supp. 21-5709(b)(1). Daino moved to suppress the evidence, arguing the officers obtained all evidence through an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights. He challenged the officers' "knock-and-talk," the officers' entry into his apartment, the search of his bedroom, and the admissibility of his statements to police.

As for the officers' entry into the apartment, Daino argued he did not validly consent because he never verbally agreed to let the officers enter. For support, he cited *State v. Poulton*, 37 Kan. App. 2d 299, 307, 152 P.3d 678 (2007), *aff'd in part, rev'd in part* 286 Kan. 1, 179 P.3d 1145 (2008). Daino claimed that, like the defendant in *Poulton*, his nonverbal conduct showed mere acquiescence to the officers' claim of authority, not valid consent. The State advanced the opposite position.

The district court granted Daino's motion to suppress, ruling *only* on Daino's challenge to the officers' entry into the apartment. The court found McKeirnan was credible. It also found Daino's gesture clearly communicated an invitation to enter the apartment. But it construed *Poulton* as prohibiting implied or nonverbal consent "under any circumstances, regardless of how clear . . . the gestures might be."

6

The district judge expressed his disagreement with what he perceived to be *Poulton*'s holding but acknowledged he was bound by that decision:

"[W]ere it up to me, I would find that consent was freely and specifically and intelligently given.

"But again, [*Poulton*], I think, is clear that . . . consent may never be implied. And one of the things that I think finally allowed me to land on a decision, one I don't agree with but one I think I have to make, is the fact that the Court of Appeals cited with approval the Black[']s Law Dictionary [definition] of implied consent as, [m]anifested by signs, actions, or facts, or by inaction or silence, which raise a presumption or inference that the consent has been given.

"Maybe I am just simpleminded but, again, even though I don't agree with it, I read the Kansas case law as saying that no action or gesture can be construed as implied consent.

. . . .

"Again, if I haven't said it already enough times, I don't agree. I believe if it were up to me that [Daino] did consent knowingly, voluntarily. But I believe that under the current status of Kansas law, it was not consent and, as a result, I must grant the motion to suppress."

After the district court explained its ruling, the State asked the court to clarify whether the ruling was based exclusively on section 15 of the Kansas Constitution Bill of Rights. The court responded, "I believe that that is my finding."

The State filed an interlocutory appeal, arguing Daino either expressly or impliedly consented to the officers' entry through his nonverbal conduct, and the consent was valid under both the Fourth Amendment and section 15. In a split decision, the Court

of Appeals reversed the district court. *State v. Daino*, 57 Kan. App. 2d 653, 670, 458 P.3d 252 (2020). The majority observed that Kansas courts have traditionally interpreted section 15 as providing the same protections as the Fourth Amendment. 57 Kan. App. 2d at 660-61. It noted federal courts interpreting the Fourth Amendment have found that "'[c]onsent can be found from an individual's words, acts or conduct.'" 57 Kan. App. 2d at 669-70 (quoting *Krause v. Penny*, 837 F.2d 595, 597 [2d Cir. 1988]). While some Kansas Court of Appeals decisions had found that an individual's conduct was insufficient to support a finding of lawful consent, the majority noted the defendants in those cases had merely failed to object to the officers' uninvited entry. In contrast, the majority found Daino had affirmatively communicated to the officers that they could enter his apartment. 57 Kan. App. 2d at 668-69. It concluded that a reasonable person would have understood Daino's conduct as consenting to the officers entering his apartment, and thus the State had met its burden to show Daino unequivocally, specifically, freely, and intelligently gave his consent. 57 Kan. App. 2d at 669.

Judge Buser dissented, finding Daino had merely acquiesced to the officer's claim of authority because: (1) McKeirnan did not explicitly or implicitly inform Daino that he was requesting permission to enter to search the premises; (2) McKeirnan did not inform Daino of his right to refuse the officer's request to enter the apartment; and (3) McKeirnan's statements were misleading and a reasonable person would not have understood he was seeking entry to search the apartment. 57 Kan. App. 2d at 671-72 (Buser, J., dissenting). Given these circumstances, Judge Buser concluded that a reasonable person would not have understood Daino's silent gesture as fully informed and freely given consent to enter the apartment to search for and seize marijuana. 57 Kan. App. 2d at 673-74 (Buser, J., dissenting).

Daino petitioned for review, arguing there is an apparent conflict in Kansas caselaw as to whether nonverbal conduct can establish valid consent. We granted review to consider this issue.

8

ANALYSIS

*Legal Framework and Standard of Review*

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." This provision, made applicable to the states through the Fourteenth Amendment, prohibits government actors from performing unreasonable searches or seizures. *State v. Chavez-Majors*, 310 Kan. 1048, 1053, 454 P.3d 600 (2019). Likewise, section 15 of the Kansas Constitution Bill of Rights prohibits unreasonable searches and seizures. This court has traditionally interpreted section 15 as providing protections identical to the Fourth Amendment. *State v. Zwickl*, 306 Kan. 286, 291, 393 P.3d 621 (2017). Here, neither the district court nor the parties suggest section 15 offers protections greater than the Fourth Amendment.

A warrantless search is always unreasonable unless an exception to the warrant requirement applies. *Chavez-Majors*, 310 Kan. at 1053. Absent consent or exigent circumstances, the warrantless search of a home is presumptively unconstitutional. See *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004); *Steagald v. United States*, 451 U.S. 204, 211, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981). For purposes of the Fourth Amendment, entry into the home is considered a search. See *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012) (finding officer's entry into home constituted search for purposes of Fourth Amendment); see also *Payton v. New York*, 445 U.S. 573, 585-86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ("'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'").

9

Here, the State argued the officers' warrantless entry into Daino's apartment was lawful because Daino consented to the entry. The existence, voluntariness, and scope of a consent to search is a question of fact to be determined from the totality of the circumstances. *State v. Jones*, 279 Kan. 71, 77, 106 P.3d 1 (2005); see also *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-27, 248-49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Moore*, 283 Kan. 344, 361, 154 P.3d 1 (2007). The State has the burden of establishing, by a preponderance of the evidence, that a defendant's consent to search is valid. *State v. Boggess*, 308 Kan. 821, 827, 425 P.3d 324 (2018); *Jones*, 279 Kan. at 77. A showing of mere acquiescence to a claim of lawful authority will not satisfy this burden. 279 Kan. at 78. Instead, to demonstrate valid consent, the State must (1) provide clear and positive testimony that consent was unequivocal, specific, and freely and intelligently given; and (2) demonstrate the absence of duress or coercion, express or implied. *State v. Cleverly*, 305 Kan. 598, 613, 385 P.3d 512 (2016); see *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997).

While consent must be unequivocal, specific, and freely and intelligently given, neither Kansas law nor constitutional doctrine require it be verbal, i.e., written or spoken. *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Instead, an individual may express his or her consent through gestures or other indications of affirmation, so long as they sufficiently communicate an individual's unequivocal, specific, and freely given consent. 472 F.3d at 789-90.

Courts employ an objective reasonableness standard to determine the existence and scope of an individual's consent. *State v. Johnson*, 253 Kan. 356, 365, 856 P.2d 134 (1993) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 [1991]); see *United States v. Flores*, 48 F.3d 467, 468 (10th Cir. 1995). Therefore, the key inquiry is whether, based on the totality of the circumstances, the conduct and

10

interaction would have caused a reasonable officer to believe the defendant consented to entry or search. *United States v. Muse*, 428 F. Supp. 3d 1186, 1193 (D.N.M. 2019) (quoting *Flores*, 48 F.3d at 468-69), *reconsideration denied* No. 17-CR-2008 MV, 2020 WL 709270 (D.N.M. 2020); *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008).

When reviewing a district court's ruling on a motion to suppress, appellate courts review the factual findings for substantial competent evidence and the ultimate legal conclusion de novo. *State v. Guein*, 309 Kan. 1245, 1251-52, 444 P.3d 340 (2019). Here, the district court ruled, as a matter of law, that Daino could not consent through nonverbal conduct. As such, we review this legal conclusion de novo.

*Kansas law does not preclude consent through nonverbal conduct.*

In his petition for review, Daino argues Kansas appellate courts disagree whether an individual may consent to search through nonverbal conduct. However, a careful review of this authority reveals no such conflict. To the contrary, these decisions confirm that an individual may communicate valid consent through nonverbal conduct, provided such conduct, under the totality of the circumstances, clearly expresses an individual's unequivocal, specific, free, and intelligent consent, in the absence of duress or coercion, and does not constitute mere acquiescence to a claim of lawful authority.

For example, in *Cleverly*, we indicated a defendant may consent to a search through nonverbal conduct facilitating the search. There, Cleverly handed his cigarette packages to an officer after the officer asked to search them during a traffic stop. One package had methamphetamine inside. The district court denied Cleverly's motion to suppress, finding he had validly consented to the search. On review, we held Cleverly was illegally detained by the officer before the search. We also observed that Cleverly

11

clearly expressed his consent through the nonverbal act of handing his cigarette packs to the officer upon request. *Cleverly*, 305 Kan. at 613. However, based on the continuation of the unlawful detention and the post-traffic stop conduct of the officers, we held "under the totality of the circumstances of this case, the nature of Cleverly's unlawful seizure rendered his consent to the search of the cigarette package involuntary and, consequently, invalid." 305 Kan. at 614.

Several Court of Appeals decisions have also viewed defendant's nonverbal conduct as probative of voluntary consent. In *State v. Seeley*, No. 99,456, 2009 WL 500960 (Kan. App. 2009) (unpublished opinion), an officer asked Seeley if he could search her apartment for illegal narcotics and Seeley nodded her head. Seeley argued her head nod did not establish substantial evidence that her consent was unequivocal, specific, and intelligently given. The Court of Appeals noted "[a]rguably, a nod of the head can be unequivocal and specific," citing *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999), and *United States v. Torres*, 983 F. Supp. 1346, 1354-55 (D. Kan. 1997). *Seeley*, 2009 WL 500960, at *4. The panel also noted Seeley had told officers they could "'look around,'" and it held the totality of the circumstances provided substantial evidence supporting the district court's conclusion that her consent was valid. 2009 WL 500960, at *4.

In *State v. Tabarez*, No. 104,352, 2011 WL 5389690 (Kan. App. 2011) (unpublished opinion), Tabarez nodded when an officer asked for permission to search Tabarez' pants during a traffic stop. In analyzing whether Tabarez consented to the search, the panel acknowledged "[c]ertainly, caselaw supports a finding that a nod of the head can be unequivocal and specific," again citing *Gordon* and *Torres*. *Tabarez*, 2011 WL 5389690, at *5. The panel concluded that Tabarez' nonverbal response to the request to search, coupled with other circumstances supporting the voluntariness of the encounter, provided adequate support for the district court's conclusion that consent was valid. 2011 WL 5389690, at *5-6.

Most recently, in *City of Topeka v. Murdock*, No. 116,213, 2018 WL 385699 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1593 (2018), an officer said he needed to discuss personal business with Murdock and would rather not do it in the hallway. Murdock told the officer to "come in," stepped back into his apartment and gave a slight wave. Citing *Seeley* and *Gordon*, the Court of Appeals acknowledged that "[n]onverbal conduct can also constitute consent to enter an individual's home." 2018 WL 385699, at *3. The panel reasoned that, "[i]f a nod of the head can be unequivocal and specific, so can a wave paired with opening the door wider and stepping backwards." 2018 WL 385699, at *3. The panel concluded Murdock's conduct and language unequivocally expressed his valid consent to entry. 2018 WL 385699, at *3.

Federal jurisprudence likewise confirms that an individual can unequivocally express his or her lawful consent under the Fourth Amendment through nonverbal conduct. See *Guerrero*, 472 F.3d at 789-90; see also *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011) ("Consent can be inferred from nonverbal actions, but it must be 'unequivocal and specific' and 'freely and intelligently given.'"); *United States v. Lewis*, 476 F.3d 369, 381 (5th Cir. 2007) ("The officers reasonably interpreted Caldwell's gesture as an invitation to enter the room."); *United States. v. Winston*, 444 F.3d 115, 122 (1st Cir. 2006) ("We do not find it of decisive significance that in response to the agent's question as to the location of the nightstand, Winston motioned with his shoulder rather than speaking. In other situations, we have found implied-in-fact consent based entirely on silent actions."); *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) ("Consent to a search 'may be in the form of words, gesture, or conduct.'"); *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000) ("It is well established that consent may be manifested in a non-verbal as well as a verbal manner."); *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981) ("[I]t is well settled that consent may be inferred from an individual's words, gestures, or conduct."). We find these cases persuasive, as we have

interpreted section 15 as providing the same protections as the Fourth Amendment. We do not depart from that precedent today.

Granted, not every Kansas appellate court has concluded that defendant's nonverbal conduct was sufficient to establish lawful consent under the totality of the circumstances. Most notably, in *Poulton*, on which the district court relied in granting Daino's motion, the Court of Appeals held that an individual's mere acquiescence did not provide substantial evidence of lawful consent. There, officers went to Poulton's home looking for a woman who had violated parole. Poulton met with the officers on his porch. When the officers said they wanted to go inside to get the woman, Poulton offered to do it himself. The officers then followed Poulton into his home—neither asking permission nor waiting for the same from defendant. Poulton later moved to suppress the evidence officers found once inside his home, but the district court ruled Poulton had impliedly consented to the search. The Court of Appeals reversed, finding Poulton's mere acquiescence to law enforcement's uninvited entry did not satisfy the standard for voluntary consent under the totality of the circumstances. *Poulton*, 37 Kan. App. 2d at 307-08.

Several Court of Appeals panels have relied on *Poulton* to conclude a defendant's nonverbal conduct constituted mere acquiescence, not voluntary consent, where the State attempted to infer consent from an individual's inaction or failure to protest law enforcement's uninvited entry or search. See *State v. Metcalf*, No. 117,802, 2018 WL 5851524, at *9 (Kan. App. 2018) (unpublished opinion) (conduct of motel room occupant, who did not invite in or deny entry to officers and complied with officer's request to locate defendant inside the room, did not establish that she gave "unequivocal, specific" consent); *State v. Cox*, No. 112,387, 2015 WL 1785576, at *4 (Kan. App. 2015) (unpublished opinion) (defendant did not implicitly consent to the search of a bag left in another person's vehicle where defendant confirmed her bag was a "Buckle" bag with a

14

wood sander inside, driver confirmed which of several "Buckle" bags belonged to defendant, but officer looked inside to see if it contained a wood sander and found a methamphetamine pipe); *State v. Tang*, No. 109,875, 2013 WL 6168664, at *5 (Kan. App. 2013) (unpublished opinion) (finding defendant's act of opening the door, walking into home, and failing to otherwise prevent officer from following him in did "not show that Tang unequivocally, specifically, freely, and intelligently consented to [law enforcement's] entry into his home").

None of these decisions embrace a rule of law foreclosing nonverbal conduct as a basis for valid consent. Instead, their outcomes are fact driven and dependent on the characteristics of the accused, the nature of the nonverbal conduct, and other circumstances regarding the interaction and conditions in which consent was purportedly granted. *Poulton*, et al., refused to infer consent based merely on an individual's silence, inaction, or failure to protest, often in situations where officers did not even ask to enter a residence or search belongings. In other words, under the facts unique to those decisions, an individual's silence or inaction in response to law enforcement's uninvited entry failed to provide substantial evidence of unequivocal, specific, and freely given consent. Rather than prohibiting consent based on nonverbal conduct, these cases illustrate the well-established legal pronouncement that consent must be founded on something more than mere acquiescence to a claim of lawful authority. *Jones*, 279 Kan. at 78 (defendant's mere acquiescence to preliminary breath test did not establish voluntary consent); *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) (The burden of proving that the consent was, in fact, freely and voluntarily given "cannot be discharged by showing no more than acquiescence to a claim of lawful authority.").

Federal authority interpreting the Fourth Amendment reinforces this proposition. Like *Poulton*, federal courts have refused to find valid consent where the nonverbal conduct was ambiguous or the individual simply failed to object to the officer's entry into

15

the home. See, e.g., *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1329 (11th Cir. 2006) ("[C]onsent cannot reasonably be inferred from Bashir's simple act of disengaging from conversation with Sergeant Reed and walking into the house. Nor can consent reasonably be inferred from Bashir's conduct once [Deputy] Davis was already inside."); *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990) (holding that "merely retreating into one's home while being followed by a police officer," standing alone, does not show consent to police entry and consent not implied because defendant failed to object to officers entering apartment's open door); *United States v. Little*, 431 Fed. Appx. 417, 420-21 (6th Cir. 2011) (unpublished opinion) (holding no implied consent where officer failed to ask permission to enter and "'merely followed Defendant into the house when Defendant went in to get additional clothing'").

On the other hand, federal courts have found an individual's nonverbal conduct constituted valid consent where, under the totality of the circumstances, a reasonable officer could interpret such conduct (such as opening a door, stepping back, nodding in the affirmative, and/or a waving-in gesture) as an unequivocal response to law enforcement's request to search. See, e.g., *United States v. Sabo*, 724 F.3d 891, 894 (7th Cir. 2013) ("'[T]his court, on more than one occasion, has found that the act of opening a door and stepping back to allow entry is sufficient to demonstrate consent.'"); *Lewis*, 476 F.3d at 381 (holding that officers reasonably interpreted occupant's gesture as invitation to enter after they knocked on hotel room door); *Carter*, 378 F.3d at 587 (finding defendant's actions constituted consent because he stepped back and allowed officers in after they asked permission to enter); *United States v. Ramirez-Chilel*, 289 F.3d 744, 751-52 (11th Cir. 2002) (finding defendant demonstrated consent by yielding right of way so officers could enter residence after officers asked to enter); *United States. v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) ("An invitation or consent to enter a house may be implied as well as expressed. There was no error in the determination of the district court that the action of Church in the opening of the door and stepping back constituted an implied invitation to enter.").

16

Together, these decisions stand for the well-established proposition that lawful consent requires clear and positive evidence that an individual's consent is unequivocal, specific, freely given, and free from duress or coercion, under the totality of the circumstances. *State v. Ransom*, 289 Kan. 373, Syl. ¶ 4, 212 P.3d 203 (2009). This holds true whether the consent is founded on verbal or nonverbal conduct, or both.

Further, these decisions instruct that when examining whether a reasonable officer would interpret nonverbal conduct as valid consent under the totality of the circumstances, the court should consider all relevant circumstances that give meaning and context to the encounter, including any substantive nexus between the statements or conduct of law enforcement and the defendant's nonverbal response. In exploring such a nexus, courts have generally found nonverbal conduct to be more characteristic of mere acquiescence where "law enforcement officers either did not ask for permission to enter or search, and thus did not make known their objective, or, if they did, their request was met with no response or one that was nonspecific and ambiguous." *Turner v. State*, 133 Md. App. 192, 207-08, 754 A.2d 1074 (2000). In contrast, courts have been more inclined to find valid consent from nonverbal conduct where a substantive nexus is apparent and

> "the police made it known, either expressly or impliedly, that they wished to enter the defendant's house, or to conduct a search, and within that context, the conduct from which consent was inferred gained meaning as an unambiguous gesture of invitation or cooperation or as an affirmative act to make the premises accessible for entry." 133 Md. App. at 207.

In short, the presence or absence of a substantive nexus between the officer's request and the nonverbal response is often highly probative when "examining the totality of the circumstances to determine whether a reasonable officer would interpret a gesture or

17

conduct as consent." *United States v. Bynum,* 125 F. Supp. 2d 772, 783-84 (E.D. Va. 2000) ("Those decisions teach that . . . it is necessary to consider the question posed by, and the actions of, the law enforcement officers to which the defendant's non-verbal conduct was a response."), *rev'd in part on other grounds* 293 F.3d 192 (4th Cir. 2002).

Therefore, we agree with the Court of Appeals that "nothing in our precedent requires consent to be verbal—it merely requires that consent be clear and unequivocal." *Daino*, 57 Kan. App. 2d at 669. As such, the district court committed legal error by granting Daino's motion to suppress based on the erroneous conclusion that Kansas law precludes an individual from communicating valid consent through nonverbal conduct.

We sympathize with the district court because *Poulton*'s use and definition of the phrase "implied consent" seems to have created unnecessary confusion regarding the appropriate legal standard. *Poulton* used the phrase "implied consent" to describe defendant's silence or inaction in response to law enforcement's uninvited entry into the residence. However, *Poulton* also relied on Black's Law Dictionary to define "implied consent" broadly to include "'[t]hat manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption or inference that the consent has been given.'" *Poulton*, 37 Kan. App. 2d at 307. Then, it pronounced that "[c]onsent by implication . . . is contrary to established law," and concluded "[t]he fact that Poulton acquiesced or impliedly consented in the officers' entry does not meet the standard for voluntary consent." 37 Kan. App. 2d at 307. Here, the district court found that nonverbal conduct fell within *Poulton*'s broad definition of "implied consent" and then applied *Poulton*'s pronouncement that "implied consent" is contrary to established law to grant Daino's motion to suppress.

We understand the district court's rationale. However, properly construed, *Poulton*'s use of the term "implied consent" must be limited to the "inaction or silence" exhibited under the facts of that case. Any construction of *Poulton* as a rejection of

18

"implied consent" altogether, and consent implied through unequivocal nonverbal conduct specifically, is legally erroneous. The validity of consent does not depend on labels and definitions characterizing the conduct in question as "implied" and "express" or "verbal" and "nonverbal." Instead, the focus remains on the message the individual unequivocally conveys through his or her conduct, if any, under the totality of the circumstances.

In conclusion, the State bears the burden to prove the legality of the warrantless search of Daino's apartment. See *Cleverly*, 305 Kan. at 605 (State bears burden of proving legality of challenged search or seizure). If the State wishes to rely on the consent exception, it must prove Daino unequivocally, specifically, freely, and intelligently consented to any search, free from duress or coercion, under the totality of the circumstances. This standard remains unchanged. We only clarify that an individual may express valid consent through words, acts, or conduct, and an individual's nonverbal conduct can be relevant in determining whether this standard has been met.

*The matter must be remanded for a new hearing under the appropriate legal standards.*

While we agree with the legal conclusion reached by the majority of the Court of Appeals panel (that an individual may validly consent to law enforcement's entry and search through nonverbal conduct), the majority did not end its analysis here. Instead, it went on to find and conclude that "[t]he totality of circumstances shows that Daino unequivocally, specifically, freely, and intelligently consented to officers entering his residence to investigate the smell of marijuana." 57 Kan. App. 2d at 669. This conclusion exceeded the scope of the panel's review.

Whether Daino voluntarily consented, free from duress or coercion, is a question of fact to be determined by the district court under the totality of the circumstances. *State v. Thompson*, 284 Kan. 763, 783, 166 P.3d 1015 (2007). Here, the district court

19

concluded, as a matter of law, that Daino could not consent through nonverbal conduct. As such, the district court did not make (nor did it need to make) the findings necessary to support the conclusion that consent was otherwise unequivocal, specific, free, and intelligent, and free from duress or coercion, express or implied, under the totality of the circumstances. To the extent the record could be read to imply such findings, they were conjectural at best because the district court knew its ruling was founded entirely on a question of law. Indeed, as the parties agreed at oral argument, our review on appeal is limited to deciding whether the district court's legal conclusion is correct. The majority engaged in improper fact-finding to reach the ultimate question, which exceeded the scope of review on appeal. See *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014) (appellate courts do not make fact-findings but review those made by the district court).

Further, at this stage of the proceedings, there is great difficulty and potential danger in determining, in isolation, the legality of the officers' initial entry into the apartment. In his motion, Daino challenged not only the officers' entry, but also the officers' "knock-and-talk," the subsequent search of the bedroom, and the admissibility of any statements made to police during these encounters. Because the district court found the officers' initial entry into the apartment to be invalid as a matter of law, it did not reach these additional issues or make factual findings pertaining to them. As highlighted by Judge Buser's dissenting opinion, the facts giving rise to these additional issues are closely intertwined with those relevant to deciding whether Daino unequivocally, specifically, and freely consented to the officers' entry, free from duress or coercion. As such, the district court should consider these issues and any fact-finding relevant to them together as part of the totality of the circumstances.

The district court's legal error necessitates remand for additional proceedings and fact-finding under the proper legal framework. See *State v. Garcia*, 295 Kan. 53, 64, 283 P.3d 165 (2012) (where district court ruled on motion to withdraw plea based upon an erroneous understanding of the law, we must reverse the district judge's ruling and

20

remand for another hearing applying the appropriate legal standards). Accordingly, we remand this case to the district court for further proceedings on Daino's motion to suppress consistent with our clarification of the relevant legal standards.

Affirmed in part, reversed in part, and remanded to the district court with directions.

BEIER, J., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Ward was appointed to hear case No. 120,824 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Carol A. Beier.